UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOSEPH AVERZA, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>SUPER MICRO COMPUTER, INC., et al.,<br><br>　　　　Defendants. | Case No. 5:24-cv-06147-EJD<br><br>**ORDER GRANTING DISCOVERY AND CONTINUING HEARING** |

In this putative securities class action against Defendant Super Micro Computer, Inc. and certain of its officers, ten different plaintiff groups have filed motions for appointment as lead plaintiff.[1] Of those, one group has withdrawn its motion,[2] and six others have filed statements of non-opposition.[3] The remaining three—Crain Walnut, Universal, and the Covey Investor Group—filed oppositions to the motions for appointment as lead plaintiff. Crain Walnut Opp'n, ECF No. 81; Covey Opp'n, ECF No. 82; Universal Opp'n, ECF No. 83. However, only Crain Walnut and Universal filed replies. Crain Walnut Reply, ECF No. 84; Universal Reply, ECF No. 86. Thus, it appears that Crain Walnut and Universal are the only two parties actively seeking appointment as lead plaintiff.

---

[1] These ten proposed lead plaintiffs are: (1) Surendra J. Shah; (2) Theodore C. Gross and Theodore R. Gross (the "Gross Family"); (3) Valikhan Kunakbayev; (4) the Illinois Treasurer; (5) Crain Walnut Shelling, LP; (6) the Public Employees' Retirement System of Mississippi ("Mississippi PERS"); (7) Universal-Investment-Gesellschaft mbH; (8) Covey Financial Inc., Pembroke Capital Ltd. Corp., Soverel, Inc., David Burdette, and Priti Bhardwaj (the "Covey Investor Group"); (9) Erste Asset Management GmbH and Christian Mahé de Berdouaré; and (10) Edward Grosinger, Shmuel Farhi, Robert Hayes, and Deborah Kay Bielss (the "Individual Investor Group"). Lead Plf. Mots., ECF Nos. 17, 19, 23, 26, 30, 37, 38, 43, 48, 49.

[2] Withdrawal of Mot., ECF No. 77 (Gross Family).

[3] Statements of Non-Opp'n, ECF Nos. 74 (Mississippi PERS), 75 (Individual Investor Group), 76 (Erste and Mahé de Berdouaré), 78 (the Illinois Treasurer), 79 (Kunakbayev).

Case No.: 5:24-cv-06147-EJD
ORDER GRANTING DISCOVERY & CONTINUING HEARING

1

After considering all lead plaintiff papers filed to date, the Court finds that Crain Walnut is presumptively the lead plaintiff. However, Universal has raised serious questions raised about Crain Walnut's fitness for that role, and further discovery is needed to determine whether Universal can rebut the presumption that Crain Walnut should be selected as lead plaintiff. Therefore, the Court ORDERS limited discovery into Crain Walnut and CONTINUES the hearing on the lead plaintiff motions in this case.

## I.  LEGAL STANDARD

The Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4, governs the selection of lead plaintiffs in securities class actions. *In re Mersho*, 6 F.4th 891, 896 (9th Cir. 2021). Under the PSLRA, courts must "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). This does not mean, however, that courts may conduct "wide-ranging" inquiries into any matter that may bear on a plaintiff's ability to serve as lead plaintiff. *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002). Rather, the PSLRA designates as the most capable plaintiff "the one who has the greatest financial stake in the outcome of the case, so long as he meets the requirements of [Federal Rule of Civil Procedure] 23." *Id.* To identify a lead plaintiff satisfying the PSLRA's criteria, courts follow a three-step process:

*First*, the plaintiff filing the earliest complaint must publicize basic details about the proposed securities class action in a widely circulated notice. *Id.* (citing 15 U.S.C. § 78u-4(a)(3)(A)). Any interested plaintiffs must move for appointment as lead plaintiff within sixty days of the notice's initial publication. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).

*Second*, the court must identify the "presumptively most adequate plaintiff." *In re Cavanaugh*, 306 F.3d at 730 (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)). To do that, the court determines which plaintiff seeking the lead plaintiff position has the highest financial stake in the litigation. *Id.* Then, turning to that plaintiff's pleadings and declarations, the court evaluates whether she has made a prima facie showing that she is typical and adequate under Rule 23(a).

Case No.: 5:24-cv-06147-EJD
ORDER GRANTING DISCOVERY & CONTINUING HEARING
2

*Id.*; *In re Mersho*, 6 F.4th at 899. If the answer is 'yes,' she is presumptively the most adequate plaintiff. *In re Cavanaugh*, 306 F.3d at 730. If the answer is 'no,' the court must move on to the plaintiff with the next-highest financial stake and repeat its Rule 23(a) analysis. *Id.*

***Third***, other plaintiffs have the chance to rebut the presumption that the plaintiff identified in the second step is the most adequate. *Id.* (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)). At this point, the lead plaintiff selection process becomes adversarial, and mere speculation about adequacy cannot suffice. *In re Mersho*, 6 F.4th at 899, 902. The presumption of adequacy can be rebutted "only upon proof" that the plaintiff identified in the second step "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* at 899 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)–(bb)). If the presumption is not rebutted, the court must select the presumptively most adequate plaintiff as the lead plaintiff. *Id.* (citing 15 U.S.C. § 78u-4(a)(3)(B)(i)). However, if the presumption is rebutted, the court must return to step two, identify the plaintiff with the next-highest financial stake, and repeat the process for that plaintiff. *In re Cavanaugh*, 306 F.3d at 731.

Of course, at this early stage, plaintiffs will often not have evidence that they can use to rebut the presumption of adequacy. To address this issue, the PSLRA authorizes courts to open limited discovery into the presumptively most adequate plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iv). That said, such discovery is not meant as a tool "to harass presumptive lead plaintiffs." *In re Cendant Corp. Litig.*, 264 F.3d 201, 270 n.49 (3d Cir. 2001). So, a court may allow discovery only if a plaintiff challenging the presumption of adequacy "first demonstrates a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iv).

## II.  DISCUSSION

### A.  Step One

Both Crain Walnut and Universal satisfy the first step of the PSLRA's lead plaintiff selection process. The required PSLRA notice was published on August 30, 2024, Gilmore Decl.,

Case No.: 5:24-cv-06147-EJD
ORDER GRANTING DISCOVERY & CONTINUING HEARING
3

1   Ex. E, ECF No. 31-5, meaning that any lead plaintiff motions were due on October 29, 2024, sixty

2   days later. Crain Walnut and Universal filed their motions by that deadline. ECF Nos. 30, 38.

### B. Step Two

Since both Crain Walnut and Universal qualify under the PSLRA's first step, the Court next evaluates which of the two potential lead plaintiffs is presumptively the most adequate. Crain Walnut calculates approximately $49 million in losses from its investment in Super Micro securities, Gilmore Decl., Ex. B, ECF No. 31-2, which dwarfs Universal's calculated loss of approximately $12 million, Uslaner Decl., Ex. B, ECF No. 38-3, as well as every other lead plaintiff movant's calculated loss. Because neither Universal nor any other lead plaintiff movant meaningfully challenges Crain Walnut's loss calculation, the Court finds that Crain Walnut has the largest financial stake. Accordingly, the Court proceeds to evaluate whether Crain Walnut, through its pleadings and declarations, has made out a prima facie case that it is adequate and typical under Rule 23(a). *In re Cavanaugh*, 306 F.3d at 730.

A potential lead plaintiff is adequate if it (1) does not have a conflict of interest with the rest of the class and (2) will vigorously prosecute the action on behalf of the class. *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). That plaintiff is also typical if its claims "are reasonably co-extensive with those of absent class members." *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1238 (9th Cir. 2024) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). But a plaintiff "is not typical if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" *Id.* (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Crain Walnut's declarations and certifications are enough to make a prima facie showing of adequacy and typicality. For one, Crain Walnut certified that it purchased Super Micro securities and suffered losses on those purchases, Certification, ECF No. 31-1, meaning that it is typical because its claims are co-extensive with those of absent class members. Crain Walnut also affirmed that, among other things, it:

- did not purchase Super Micro securities at the direction of plaintiff's counsel or for

Case No.: 5:24-cv-06147-EJD
ORDER GRANTING DISCOVERY & CONTINUING HEARING
4

the purpose of participating in private securities litigation, Certification ¶ 3;

- is willing to serve as a representative party, and to provide testimony, *id.* ¶ 4;
- reviewed the complaint against Super Micro and authorized filing a lead plaintiff motion, *id.* ¶ 2;
- has not served or sought to serve as a lead plaintiff in a securities suit in the past three years, *id.* ¶ 6;
- agrees not to accept payment for serving as a representative beyond its pro rata share of any recovery, except for costs and expenses, *id.* ¶ 7;
- understands its duties under the PSLRA, including its duties as a fiduciary for the class and to oversee counsel and the litigation, Crain Decl. ¶¶ 3, 5–6, 8, ECF No. 31-3;
- is motivated to and will vigorously prosecute the case, *id.* ¶¶ 2, 5; and
- is not aware of any conflicts of interest with the class, or of any unique defenses. *Id.* ¶ 11.

These sworn statements make a prima facie showing of adequacy. *Kusen v. Herbert*, No. 23-cv-02940-AMO, 2023 WL 8171736, at *4–6 (N.D. Cal. Nov. 24, 2023) (finding that similar sworn statements established adequacy).

Although Universal objects to Crain Walnut's adequacy on various grounds, none of those objections affect Crain Walnut's prima facie showing of typicality and adequacy. As the Ninth Circuit made clear, courts assess a potential lead plaintiff's prima facie case through that plaintiff's declarations and pleadings. *In re Cavanaugh*, 306 F.3d at 730. Universal's objections, however, are based on information from beyond Crain Walnut's declarations and pleadings. They are not properly considered at the second step of the PSLRA's lead plaintiff selection process. Therefore, the Court finds that Crain Walnut is presumptively the most adequate plaintiff.

**C.   Step Three**

Having found that Crain Walnut is the presumptive lead plaintiff, the Court moves to the final step of the PSLRA's selection process. It is here that the Court evaluates whether

Case No.: 5:24-cv-06147-EJD
ORDER GRANTING DISCOVERY & CONTINUING HEARING
5

Universal's arguments against Crain Walnut's adequacy are enough to rebut the presumption in favor of Crain Walnut. The Court concludes that Universal has not rebutted the presumption, but it has demonstrated a reasonable basis for questioning Crain Walnut's adequacy. Therefore, discovery is necessary before the Court can make a final decision. *See* Universal Opp'n 10 (requesting discovery).

Universal essentially raises four issues with Crain Walnut's adequacy: (1) that Crain Walnut's opaque corporate structure raises questions about who will be supervising this litigation if the Court appoints Crain Walnut as lead plaintiff; (2) that Crain Walnut may not be able to continue as a going concern given its reported $49 million loss on its Super Micro investment; (3) that Crain Walnut's decision to invest $144 million over six weeks in a tech stock like Super Micro raises questions about whether Crain Walnut is a typical investor, *see* Certification, especially since Crain Walnut purports to be "in the business of processing, packing and shipping English Walnut meats," Crain Decl. ¶ 4; and (4) that the lack of detail about Crain Walnut's process for selecting counsel suggests that counsel, rather than Crain Walnut, is driving the litigation. The Court addresses each in turn.

*Corporate Structure.* When first moving for appointment as lead plaintiff, Crain Walnut characterized Charles R. Crain, Jr. ("Mr. Crain") as its "President, Chief Executive Officer, and sole owner." Certification ¶ 1; *see also* Crain Decl. However, as Universal pointed out in opposition, Crain Walnut is a Delaware limited partnership, and limited partnerships cannot have a sole owner under Delaware law. Universal Opp'n 6; *see also* Del. Code tit. 6, § 17-101(11) ("'Limited partnership' . . . mean[s] a partnership formed under the laws of the State of Delaware consisting of 2 or more persons and having 1 or more general partners and 1 or more limited partners . . . ."). What is more, a search of records filed with the Delaware Secretary of State revealed Crain Walnut's general partner to be an entity called Nuez Progresivo, Inc., not Mr. Crain. Uslaner Decl., Ex. B, ECF No. 83-3. In reply, Crain Walnut submitted a supplemental declaration that further (and more accurately) described its corporate structure. Crain Walnut explained that its general partner is Nuez Progresivo, Inc., which is 100% owned by Grupo

Progresivo, Inc., which in turn is 100% owned by Mr. Crain. Suppl. Crain Decl. ¶ 4, ECF No. 85-1. Crain Walnut also disclosed that its limited partner is Crain Walnut Shelling, Inc., which is 100% owned by Mr. Crain and for which Mr. Crain serves as the CEO and sole director. *Id.* Based on this, Mr. Crain represents that he effectively has complete control over Crain Walnut despite its somewhat complicated structure. *Id.*

The problem with this belated clarification is that Crain Walnut had previously held out Mr. Crain as its "sole owner," which is technically inconsistent with its actual structure. There may well be an innocent reason for this discrepancy—Crain Walnut might have aimed to disclose who, practically speaking, had decision-making control rather than the specifics of its corporate structure. Even if that is so, Crain Walnut's imprecision at least raises questions about its carefulness and thoroughness when discussing its corporate structure. Moreover, Crain Walnut's clarification about its partnership structure does not clear up all questions about its corporate structure. For instance, Crain Walnut holds itself out "as a division of a large farming business, Crain Orchards, Inc." *About Us*, Crain Walnut Shelling, LP, https://www.crainwalnut.com/about [https://perma.cc/5VPX-459L]. That representation appears to be inconsistent with Crain Walnut's partnership structure as well.

None of this proves that Crain Walnut will not adequately supervise counsel, so these arguments are not enough to rebut the presumption. But the issues above pose serious questions about who holds final decision-making authority and how Crain Walnut would oversee this litigation if appointed as lead plaintiff. As such, the Court finds that there are reasonable grounds to open discovery into Crain Walnut's ownership structure and decision-making processes. *See Applestein v. Medivation Inc*, No. 10-cv-00998-MHP, 2010 WL 3749406, at *5 (N.D. Cal. Sept. 20, 2010) (granting discovery to address "concerns about [a lead plaintiff movant]'s transparency and its trading practices"); *Smajlaj v. Brocade Commc'ns Sys. Inc.*, No. 05-cv-02042-CRB, 2006 WL 7348107, at *2 (N.D. Cal. Jan. 12, 2006) (expressing concern about "continuous 'new' revelations that appear to expose the somewhat complicated and intricate structure of the [lead plaintiff movant]").

Case No.: 5:24-cv-06147-EJD
ORDER GRANTING DISCOVERY & CONTINUING HEARING
7

***Going Concern.*** Because Crain Walnut is a private company, detailed financial information is not available. However, Universal uncovered information from a business data aggregator estimating Crain Walnut's annual revenues to be approximately $7.5 million.[4] Uslaner Decl., Ex. A, ECF No. 83-2. Crain Walnut's claimed loss of $49 million on its Super Micro investment is more than six times its estimated annual revenue, calling into question whether Crain Walnut can bear those losses and continue operating. Any threat to Crain Walnut's ability to continue as a going concern also threatens to interfere with Crain Walnut's ability to adequately prosecute this case.

Crain Walnut responds that this revenue estimate is unreliable hearsay and that, instead of crediting that estimate, the Court should give weight to Mr. Crain's supplemental declaration affirming that Crain Walnut is on solid financial footing. Crain Walnut Reply 6; Suppl. Crain Decl. ¶ 7. The Court shares Crain Walnut's doubts about the reliability of Universal's proffered revenue estimate, which is why that estimate, standing alone, is not sufficient to rebut the presumption of adequacy. Yet, given the very early stage of this case and Universal's inability to access Crain Walnut's financials, the Court finds that Universal's revenue estimate is enough to raise reasonable questions about Crain Walnut's financial standing, and that there should be discovery to confirm Crain Walnut's finances.[5]

As an alternative to discovery, Crain Walnut offers to submit financial documents for the Court to review in camera. Suppl. Crain Decl. ¶ 7. While the Court appreciates Crain Walnut's willingness to do so, the third step of the lead plaintiff selection process is meant to be

---

[4] Universal also pointed to another aggregator estimating revenues to be $15.3 million, but that aggregator appears to be referring to Crain Walnut Shelling, Inc. rather than the limited partnership moving for appointment as lead plaintiff here. Universal Opp'n 5 (citing *Crain Walnut Shelling Revenue & Competitors*, Growjo, https://growjo.com/company/Crain_Walnut_Shelling [https://perma.cc/GJD8-5P7F]).

[5] Crain Walnut submits other revenue estimates showing that its revenues may be as high as $50 million per year. Crain Walnut Reply 6. But even crediting those estimates, which all refer to Crain Walnut Shelling, Inc., Crain Walnut would still have lost a full year's worth of revenue on its Super Micro investment. That does not alleviate the concerns about Crain Walnut's financial standing.

Case No.: 5:24-cv-06147-EJD
ORDER GRANTING DISCOVERY & CONTINUING HEARING

8

"adversarial." *In re Mersho*, 6 F.4th at 899. The PSLRA, too, also calls for competing lead plaintiff movants to take discovery, not for courts to privately assess evidence. 15 U.S.C. § 78u-4(a)(3)(B)(iv). The Court will benefit from robust argument by both Crain Walnut and Universal, so it orders discovery into Crain Walnut's financial condition rather than in camera submission of documents.

***Typicality.*** What most concerns the Court is that much about Crain Walnut's investment in Super Micro stock does not add up. Crain Walnut is purportedly in the business of processing, packing, and shipping walnuts. Crain Decl. ¶ 4. That business, however, is utterly divorced from Crain Walnut's $144 million investment into Super Micro, a technology company that provides server and data storage systems. Gilmore Decl., Ex. B; Compl. ¶ 20, ECF No. 1. Although Mr. Crain later clarified that he uses Crain Walnut "to make investments and generate returns on money [he has] earned through multiple sources of business and investment income," Suppl. Crain Decl. ¶ 7, that only further begs the question why Mr. Crain would choose an entity actively operating in the walnut market to also serve as his investment vehicle.

Moreover, Crain Walnut amassed its entire $144 million position in Super Micro stock over the course of six weeks. Gilmore Decl., Ex. B. Whether or not pouring this much money this quickly into a single stock is unusual for large institutional investors, it raises eyebrows when a walnut company does so. That being the case, the Court has its doubts about whether Crain Walnut relied on Super Micro's alleged misrepresentations to purchase Super Micro stock, like the typical class member, or of some other reason might have driven Crain Walnut's decision to rapidly acquire stock. *See Marjanian v. Allied Nev. Gold Corp.*, No. 2:14-cv-0650-JCM-VCF, 2014 WL 12769810, at *7–8 (D. Nev. Nov. 7, 2014) (noting that reliance issues might render a potential lead plaintiff atypical).

Accordingly, the Court also allows discovery into the circumstances of Crain Walnut's purchase of Super Micro stock.

***Selection of Counsel.*** Finally, Universal questions Crain Walnut's selection of counsel. But Universal's argument is largely based on the fact that Crain Walnut did not provide more

detail about its counsel selection process. In attempting to argue from lack of detail, Universal speculates about what might have caused Crain Walnut to select its counsel. That speculation is certainly not the "proof" required to rebut the presumption of adequacy. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Nor is it enough to establish a reasonable basis for discovery. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iv). So, the Court does not permit discovery into Crain Walnut's choice of counsel.

### III.   CONCLUSION

In sum, the Court finds that Crain Walnut is the presumptively most adequate plaintiff, but that Universal has raised a reasonable basis for conducting further discovery into Crain Walnut. The Court therefore GRANTS discovery into Crain Walnut's suitability for the role of lead plaintiff, limited to the topics identified as appropriate for discovery in this Order. Crain Walnut and Universal shall proceed with discovery as follows:

- Discovery shall remain open for **sixty (60) days**;
- Within **ten (10) days** of this Order, Crain Walnut and Universal shall submit a protective order for Court approval;
- Due to the abbreviated time for conducting discovery, Crain Walnut must respond to discovery requests within **twenty-one (21) days** of service;
- Crain Walnut and Universal must meet and confer via live communication regarding any discovery disputes before seeking Court intervention;
- Any discovery motions must be filed within **fourteen (14) days** of service of objections.

To allow time for discovery, the Court CONTINUES the upcoming hearing on lead plaintiff selection, currently scheduled for December 19, 2024 at 9:00 am, to **March 6, 2025 at 9:00 am**. At least **fourteen (14) days** before the hearing, Crain Walnut and Universal shall file supplemental briefs of no more than **fifteen (15) pages** addressing the discovery into Crain Walnut. Because both parties will have a chance to file supplemental briefs, the Court also DENIES Universal's motion for leave to file a sur-reply. ECF No. 91. Universal can make any

Case No.: 5:24-cv-06147-EJD
ORDER GRANTING DISCOVERY & CONTINUING HEARING
10

argument in its supplemental brief that it wanted to make in its proposed sur-reply.

**IT IS SO ORDERED.**

Dated: December 12, 2024

EDWARD J. DAVILA
United States District Judge

Case No.: 5:24-cv-06147-EJD
ORDER GRANTING DISCOVERY & CONTINUING HEARING
11