**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**
JONATHAN D. USLANER (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3481

*Counsel for Proposed Lead Plaintiff
Universal-Investment-Gesellschaft mbH
and Proposed Lead Counsel for the Class*

[Additional counsel appear on signature page.]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| JOSEPH AVERZA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SUPER MICRO COMPUTER, INC., CHARLES LIANG, and DAVID WEIGAND,<br><br>Defendants. | Case No. 5:24-cv-06147-EJD<br><br><u>CLASS ACTION</u><br><br>**SECOND SUPPLEMENTAL BRIEF OF UNIVERSAL-INVESTMENT-GESELLSCHAFT MBH IN OPPOSITION TO THE LEAD PLAINTIFF MOTION OF CRAIN WALNUT SHELLING, L.P.** |

*Captions continued on next page*

**[REDACTED VERSION]**

| | |
|---|---|
| CHRISTOPHER MENDITTO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SUPER MICRO COMPUTER, INC., CHARLES LIANG, and DAVID WEIGAND,<br><br>Defendants. | Case No. 3:24-cv-06149-SI<br><br>CLASS ACTION |
| NORFOLK COUNTY RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SUPER MICRO COMPUTER, INC., CHARLES LIANG and DAVID WEIGAND,<br><br>Defendants. | Case No. 4:24-cv-06980-JST<br><br>CLASS ACTION |
| COVEY FINANCIAL INC., PEMBROKE CAPITAL LTD. CORP., and SOVEREL, INC., Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SUPER MICRO COMPUTER, INC., CHARLES LIANG, and DAVID WEIGAND,<br><br>Defendants. | Case No. 5:24-cv-07274-EJD<br><br>CLASS ACTION |

SECOND SUPPLEMENTAL BRIEF IN OPPOSITION TO CRAIN WALNUT LEAD PLAINTIFF MOTION
CASE NO. 5:24-cv-06147-EJD

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ...................................................................................1

II.   ARGUMENT .................................................................................................................2

    A.   Crain Walnut Should Not Be Appointed As Lead Plaintiff ...................................2

        1.   The Trust Agreement ..................................................................................2

        2.   The Margin Agreement ...............................................................................3

        3.   Crain Walnut Is Inadequate and Atypical ...................................................4

    B.   Universal Should Be Appointed As Lead Plaintiff ................................................5

III.  CONCLUSION ...............................................................................................................5

# **TABLE OF AUTHORITIES**

**CASES** **PAGE(S)**

*Batter v. Hecla Mining Co.*,
　2020 WL 1444934 (S.D.N.Y. Mar. 25, 2020) ...........................................................................5

*In re Boeing Co. Aircraft Sec. Litig.*,
　2019 WL 6052399 (N.D. Ill. Nov. 15, 2019) .......................................................................1, 4

*Clifton v. Willis*,
　2024 WL 1508832 (D. Colo. Mar. 5, 2024) ............................................................................4

*Magana-Munoz v. W. Coast Berry Farms, LLC*,
　2022 WL 6584545 (N.D. Cal. Sept. 29, 2022) ........................................................................3

*Mulderrig v. Amyris, Inc.*,
　340 F.R.D. 575 (N.D. Cal. 2021) .............................................................................................5

*In re Snap Inc. Sec. Litig.*,
　2019 WL 2223800 (C.D. Cal. Apr. 1, 2019) ............................................................................5

I.   PRELIMINARY STATEMENT

This Court ordered Crain Walnut to produce two documents by March 14, 2025: a margin trading agreement and the Trust Agreement.[1]  Mr. Crain did not comply with the Court's Order. Instead, Crain Walnut produced its "█████████████████████" and a copy of the Trust Agreement that is so heavily redacted as to make it incomprehensible.  Indeed, the specific question that prompted the Court to order the production of the Trust Agreement—the beneficiary of the trust—remains unanswered because Mr. Crain redacted that information.

Crain Walnut's continued refusal to provide honest and complete disclosures about the ownership of Crain Walnut is antithetical to the fiduciary responsibilities of a Lead Plaintiff and is disqualifying.  *See In re Boeing Co. Aircraft Sec. Litig.*, 2019 WL 6052399, at *7 (N.D. Ill. Nov. 15, 2019) (movant's unwillingness to provide information "casts [] further doubt on their adequacy because it suggests that they will be unable or unwilling to carry out the duties of a lead plaintiff"). Both the margin agreement and Trust Agreement were covered by document requests served in December and required to be produced by Magistrate Judge van Keulen in January.  Despite two Court Orders, Crain Walnut failed to timely produce the margin agreement and has yet to produce a usable version of the Trust Agreement.  What's more, one of the few pieces of information that could be gleaned from the improperly redacted Trust Agreement is that Crain Walnut Shelling, Inc.—the limited partner of movant Crain Walnut—is **also** not owned by Mr. Crain, highlighting yet another misrepresentation by Mr. Crain about an entity that he claimed to own.  The Trust Agreement also indicates that there are ████████████████████, contradicting Mr. Crain's testimony on that point, but the redactions make this impossible to know for certain.

Appointing Crain Walnut as Lead Plaintiff will imperil the Class's ability to recover its damages.  There is simply no reason to saddle the Class with that burden.  This Court has given

---

[1] Unless noted, all references to "ECF No. __" are to docket entries in the first-filed *Averza* action, all references to "Ex. __" are to the exhibits accompanying the Declaration of Jonathan D. Uslaner filed herewith, all capitalized terms are as defined in Universal's prior briefs (ECF Nos. 38, 83, 86, 114), all emphasis is added, and all internal citations and quotation marks are omitted.

Mr. Crain every opportunity to provide the truthful and fulsome disclosures that should have accompanied his initial motion, and which became necessary to correct his numerous misstatements to the Court. At every turn, Mr. Crain disregarded his obligations, ignored the Court's Orders, and withheld information to limit scrutiny of his "Operation." These failures are no accident: Mr. Crain admitted that he would ███████████████████████████████ ████████████. ECF No. 113-5 at 168:19-169:4. This is simply not someone who is willing and able to serve as Lead Plaintiff in an important litigation involving a corporation whose intentional misstatements caused significant harm to thousands of investors. The Class deserves better.

## II. ARGUMENT

### A. Crain Walnut Should Not Be Appointed As Lead Plaintiff

#### 1. The Trust Agreement

When Crain Walnut filed its Lead Plaintiff motion, it represented—falsely—that Mr. Crain was the "sole owner" of Crain Walnut. ECF No. 31-3 at 2. Crain Walnut later represented—falsely—that Mr. Crain was the sole owner of Crain Walnut Shelling, Inc., the limited partner of Crain Walnut. ECF No. 85-1 ¶ 4. The fact that his trust (the existence of which he revealed in a subsequent brief) had any relevance to the ownership of the walnut entities was not disclosed until Mr. Crain's deposition, which was only secured as the result of two Court Orders.

To this day, and notwithstanding multiple orders from Court, we do not know the beneficiaries of the trust that owns the proposed Lead Plaintiff. During the March 6 hearing in which the Court ordered the production of the trust documents, counsel for Universal specifically stated that "████████████████████████████████████████████████████████" and requested no "██████████████████████████████████████████████." Ex. A at 34:24-36:8. While Mr. Crain testified that the ████████████████████████████████████████, he redacted on the Trust Agreement the names of the beneficiaries of the trust—████████████████████ ██████████████. ECF No. 113-5 at 27:1-12; Ex. B at 9.

Crain Walnut has refused to provide this basic information, even though the Trust Agreement was produced pursuant to the Court's Protective Order and designated "Attorneys Eyes

Only." When Universal brought this deficiency to Crain Walnut's attention (Ex. C at 2-3), Crain Walnut refused to remove the redactions unless Universal could identify why the identities are relevant and should be unredacted. In so doing, Crain Walnut improperly attempts to place the burden of production on Universal—a position that this Court has rejected. *See Magana-Munoz v. W. Coast Berry Farms, LLC*, 2022 WL 6584545, at *2 (N.D. Cal. Sept. 29, 2022) (Davila, J.) (noting that "[r]edactions are highly disfavored where there is a protective order in place" and the producing party "generically claims that redactions are necessary for privacy reasons but fails to specify what the privacy interests are or why the protective order is not sufficient to protect those privacy interests").

For more than five months and notwithstanding multiple Court Orders, Crain Walnut has withheld information regarding the trust that owns Crain Walnut—despite its obvious connection to the question of who controls the Lead Plaintiff. Indeed, after this Court ordered discovery regarding the structure and ownership of Crain Walnut, Magistrate Judge van Keulen issued another Order clarifying that Crain Walnut had to produce discovery related to "all entities within the ownership chain of" Crain Walnut. ECF No. 109 at 3-4. The Trust Agreement was clearly responsive to this Order, but Crain Walnut improperly withheld the document and continues, to this day, to withhold the critical information about the beneficiaries of the trust.

### 2. The Margin Agreement

Universal's December 2024 document request called for the production of "all documents concerning . . . margin trading in Super Micro securities." On January 10, 2025, Universal again asked for the margin agreement, noting that Crain Walnut "has improperly refused to produce ***any*** documents" related to margin trading. ECF. 114-8 at 1. On January 27, Magistrate Judge van Keulen Ordered Crain Walnut to produce "all documents concerning . . . margin trading in Super Micro securities." ECF No. 109 at 11. Crain Walnut refused to produce margin agreements, falsely claiming that the "███████████████████████████████████████ ████" was "█████████████." ECF 113-8 at 2-3. This Court disagreed, and ordered Crain Walnut to produce the margin agreement by March 14, 2025. ECF No. 123.

On that date, Crain Walnut produced only its E*TRADE "█████████

1  ▓▓▓▓▓▓." That document, which is clearly not a margin trading agreement, referenced margin
2  agreement documents that had not been produced.  Crain Walnut finally produced those margin
3  documents on March 19, 2025—**91 days** after Universal's initial request.  Notably, none of the
4  margin agreements produced included the "▓▓▓▓▓▓▓▓▓▓" that Mr. Crain testified to
5  during his deposition, indicating that there are still documents that were not produced.  ECF No.
6  113-5 at 72:7-12.

7     Contrary to Mr. Crain's testimony, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
8  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.  The agreements do make clear that the ▓▓▓▓▓▓
9  ▓▓▓ Mr. Crain purchased ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
10 ▓▓, raising a specter regarding Crain Walnut's financial condition.  *See* Ex. D at 24-25.  By
11 improperly withholding the clearly relevant margin agreement (and Trust Agreement), Crain
12 Walnut limited Universal's ability to properly question Mr. Crain during his deposition.  Mr. Crain
13 could have avoided wasting the Court's time and sending counsel down a rabbit hole had he simply
14 complied with his discovery obligations.  Crain Walnut's penchant for secrecy is incompatible
15 with the role of the Lead Plaintiff, who will be "subject to searching discovery" by Defendants,
16 including as to its "financial condition and experience, investing methodologies, and transactions
17 in [relevant] securities."  *Boeing*, 2019 WL 6052399, at *7; *Clifton v. Willis*, 2024 WL 1508832,
18 at *5 (D. Colo. Mar. 5, 2024) (rejecting movant due to "lack of candor" and "lack of disclosure,"
19 which raised "questions about his ability or desire to be straightforward with the putative class or
20 the Court").

21     **3.  Crain Walnut Is Inadequate and Atypical**

22     Crain Walnut's refusal to comply with discovery obligations—including multiple Court
23 Orders—and serial misrepresentations about its corporate structure are, standing alone, sufficient
24 to reject its motion.  But these deficiencies, glaring as they are, must be taken together with the
25 other evidence that Crain Walnut is inadequate and atypical.  Mr. Crain's testimony that whether
26 Super Micro "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" on the case and that the
27 claims have nothing to do with "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" render him atypical and
28 incapable of representing the Class.  ECF No. 113-5 at 106:12-108:5.  The same is true of his

1  testimony that the critical disclosure that the Department of Justice is investigating Super Micro

2  "████████████." *Id.* at 142:13-147:23.  Such testimony subjects Crain Walnut to unique

3  defenses regarding the central elements of the Class's securities fraud claims.  *See, e.g.*, *Mulderrig*

4  *v. Amyris, Inc.*, 340 F.R.D. 575, 582 (N.D. Cal. 2021) (rejecting a movant over the mere "threat of

5  a unique defense"); *In re Snap Inc. Sec. Litig.*, 2019 WL 2223800, at *2-3 (C.D. Cal. Apr. 1, 2019)

6  (rejecting a movant that was "subject to the unique defense that they cannot prove loss causation"

7  over fear that it would "effectively preclude class certification").

8  Evidence of inadequacy need not be established "with absolute certainty; instead it is

9  enough that it presents a colorable risk of inadequacy."  *Batter v. Hecla Mining Co.*, 2020 WL

10 1444934, at *7 (S.D.N.Y. Mar. 25, 2020).  Universal's previous submissions to the Court detail

11 the many unique defenses afflicting Crain Walnut, which create a conflict such that Crain Walnut

12 cannot adequately represent the Class and vigorously pursue this litigation.  *See, e.g.*, *Amyris*, 340

13 F.R.D. at 582 (rejecting a movant whose "unique situation" made it "predictable that a major focus

14 of the litigation will be on a defense unique to him").

15 **B.    Universal Should Be Appointed As Lead Plaintiff**

16 In stark contrast to Crain Walnut, Universal is a seasoned lead plaintiff and class

17 representative.  ECF Nos. 38 at 8-9, 83 at 15-16, 86 at 4.  Universal has established its typicality

18 and adequacy, and is prepared to serve as Lead Plaintiff in this important action and work

19 expeditiously to give the Class its day in Court.

20 **III.   CONCLUSION**

21 For the reasons discussed above and in its prior submissions, Universal respectfully

22 requests that the Court deny Crain Walnut's motion to serve as Lead Plaintiff and otherwise grant

23 its motion.

24 Dated:  March 28, 2025                    Respectfully submitted,

25                                            **BERNSTEIN LITOWITZ BERGER**
26                                              **& GROSSMANN LLP**

27                                            */s/ Jonathan D. Uslaner*
                                               JONATHAN D. USLANER (Bar No. 256898)
                                               (jonathanu@blbglaw.com)
28                                             2121 Avenue of the Stars, Suite 2575

Los Angeles, CA 90067
Tel:     (310) 819-3470

-and-

GERALD H. SILK
(jerry@blbglaw.com)
AVI JOSEFSON
(avi@blbglaw.com)
SCOTT R. FOGLIETTA
(scott.foglietta@blbglaw.com)
1251 Avenue of the Americas
New York, NY 10020
Tel:     (212) 554-1400
Fax:    (212) 554-1444

*Counsel for Proposed Lead Plaintiff Universal-Investment-Gesellschaft mbH and Proposed Lead Counsel for the Class*