1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE SUPER MICRO COMPUTER, INC. SECURITIES LITIGATION | Case No.  5:24-cv-06147-EJD<br><br>**ORDER DENYING MOTION FOR RECONSIDERATION**<br><br>Re: ECF No. 149 |

Before the Court is Crain Walnut Shelling, LP's motion for reconsideration. Crain Walnut asks the Court to reconsider its various lead plaintiff selection orders, to vacate its appointment of Universal-Investment-Gesellschaft mbH as lead plaintiff, and to instead appoint Crain Walnut as lead plaintiff. The Court finds this motion suitable for decision without oral argument under Local Rule 7-1(b) and, for the following reasons, **DENIES** reconsideration.

I.      **BACKGROUND**

This case began nearly a year ago when Joseph Averza filed suit against Defendant Super Micro Computer, Inc. and certain of its executives. ECF No. 1. Averza alleged that Super Micro had committed securities fraud, triggering those provisions of the Private Securities Litigation Reform Act (PSLRA) that govern appointment of a lead plaintiff.

The Court followed the PSLRA's three-step process for selecting lead plaintiff. First, the Court waited for Averza to provide public notice of his action so that other members of the putative class could have the chance to seek appointment as lead plaintiff. *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002). Ten different lead plaintiff groups responded to Averza's notice by moving for appointment. ECF Nos. 17, 19, 23, 26, 30, 37, 38, 43, 48, 49. Eight withdrew in short order, leaving Crain Walnut and Universal to compete for the position. ECF Nos. 73–79, 82.

Second, the Court selected the "presumptively most adequate plaintiff" from among the remaining lead plaintiff applicants. *In re Cavanaugh*, 306 F.3d at 729–30. Applying the PSLRA's criteria, the Court held Crain Walnut to be the presumptive lead plaintiff. ECF No. 99.

Third, the Court allowed Universal an opportunity to rebut the presumption in favor of Crain Walnut. *In re Cavanaugh*, 306 F.3d at 730. Because Universal had raised substantial questions about Crain Walnut's adequacy, the Court permitted limited discovery into Crain Walnut's adequacy and typicality. ECF No. 99; 15 U.S.C. § 78u-4(a)(3)(B)(iv). Then, once discovery closed, the Court received supplemental briefs from Crain Walnut and Universal, and it held a hearing on the matter. ECF Nos. 111, 114, 123. Finally, based on the discussion at hearing, the Court requested and received a second set of supplemental briefs. ECF Nos. 130, 132. After thoroughly examining the lead plaintiff issue with the benefit of both discovery and voluminous briefing from Crain Walnut and Universal, the Court ultimately concluded that Universal had rebutted the presumption that Crain Walnut was the most adequate plaintiff. ECF No. 142. Accordingly, the Court denied Crain Walnut's lead plaintiff motion. *Id.*

At that point, the PSLRA required the Court to return to the second step of the lead plaintiff selection process to identify a new presumptive lead plaintiff with Crain Walnut off the board. *In re Cavanaugh*, 306 F.3d at 731. Since Universal was the only remaining plaintiff actively vying for the lead plaintiff position, the Court could have appointed Universal as lead plaintiff then. But the Court did not. Instead, in order to ensure a robust lead plaintiff selection process, the Court offered the previously withdrawing lead plaintiff candidates an opportunity to re-notice their motions and once again challenge Universal for the position. *Id.* at 21. One candidate, Valikhan Kunakbayev, re-noticed his motion before withdrawing a second time. ECF Nos. 143, 146. On the same day that Kunakbayev withdrew, Crain Walnut asked for leave to file a motion for reconsideration of the Court's earlier order. ECF No. 147.

Since Kunakbayev withdrew, the Court appointed Universal as lead plaintiff. ECF No. 148. At the same time, the Court granted leave for Crain Walnut to file a motion for reconsideration, noting that if Crain Walnut succeeded, it would vacate Universal's appointment and instead appoint Crain Walnut. *Id.* The Court now addresses that motion for reconsideration.

United States District Court
Northern District of California

## II.    LEGAL STANDARD

Courts may reconsider their interlocutory orders "at any time prior to final judgment." *Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir. 1996).  Reconsideration is an "extraordinary remedy" that interferes with "interests of finality and conservation of judicial resources."  *Kona Enters. v. Est. of Bishop*, 229 F.3d 977, 890 (9th Cir. 2000).  As such, it should be granted only "sparingly," when (a) there is newly discovered evidence, (b) clear error, or (c) an intervening change in law.  *Id.*; *see also* Civil L.R. 7-9(b).

## III.    DISCUSSION

Crain Walnut's arguments for reconsideration fall into four main categories.  First, Crain Walnut takes issue with the standard of proof that the Court applied when concluding Universal had rebutted the presumption of adequacy.  Second, Crain Walnut objects that the Court did not follow the PSLRA's procedural safeguards.  Third, Crain Walnut disagrees with the Court's factual findings and the weight that the Court assigned those findings.  Finally, Crain Walnut claims that the Court applied the law inconsistently.  The Court takes each in turn.

### A.    Standard of Proof

Under the PSLRA, once a plaintiff is presumed to be the most adequate at the second step of the selection process, that presumption can be rebutted "only upon proof" of inadequacy or atypicality.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  This requires affirmative evidence from competing plaintiffs who seek to rebut the presumption.  *In re Mersho*, 6 F.4th 891, 901 (9th Cir. 2021) ("[C]ompeting movants must point to evidence of inadequacy.").  But the PSLRA does not specify a standard of proof for rebutting the presumption; it says nothing about how much evidence is needed or how convincing a competing plaintiff must be.  Rather, the PSLRA says only that "proof" is necessary.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  Therefore, the Court must "prescribe" a standard of proof.  *Herman & MacLean v. Huddleston*, 459 U.S. 375, 389 (1983).  Based on its review of relevant Ninth Circuit precedent and the general principles surrounding choice of a standard of proof, the Court held that Universal could meet its burden to rebut the presumption by demonstrating, with evidence, that "genuine and serious doubt" exists about Crain Walnut's suitability to serve as lead plaintiff.  ECF No. 142 at 4–6.

United States District Court
Northern District of California

Crain Walnut contends that the genuine and serious doubt standard is erroneous both as a matter of first principles and Ninth Circuit precedent. From its perspective, the PSLRA requires a preponderance of the evidence to rebut the presumption of adequacy. As the Court discusses in a later section, this is not grounds for reconsideration because Universal successfully rebuts the presumption even under a preponderance standard. *Infra* Section III.C. That said, Crain Walnut has also not shown that the genuine and serious doubt standard is clearly erroneous.

To begin, no party has cited, nor has the Court uncovered in its own research, any precedential decision from the Ninth Circuit or any other circuit that squarely establishes the standard of proof for rebutting the PSLRA's presumption. So, identifying the proper standard requires statutory interpretation. Crain Walnut focuses on the PSLRA's use of the words "upon proof." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). According to Crain Walnut, "it makes little sense to conclude that a party has *proved* some fact without even establishing that the fact is more likely true than not." ECF No. 149 at 12 (emphasis added). However, "prove" is Crain Walnut's word, not the PSLRA's. The PSLRA uses the word "proof," and "proof" has a meaning that "prove" does not; "proof" can simply mean "evidence." *Rodriguez v. DraftKings Inc.*, No. 21-cv-5739, 2021 WL 5282006, at *9 (S.D.N.Y. Nov. 12, 2021) ("[T]he meaning of the PSLRA's term 'proof' is . . . roughly synonymous with evidence.") (citation and internal quotations omitted). Consequently, the PSLRA's direction that the presumption can only be rebutted "upon proof" can reasonably be interpreted as requiring evidence while staying silent on the question of how much evidence.

Since the word "proof" is at best ambiguous as to the standard of proof that applies, the Court looked to the PSLRA's broader context when trying to discern the standard of proof. Crain Walnut criticizes this inquiry as improperly substituting the Court's own policy judgments for those of Congress. Yet courts have always "interpret[ed] the relevant words [of a statute] not in a vacuum, but with reference to the statutory context, structure, history, and purpose." *Abramski v. United States*, 573 U.S. 169, 179 (2014) (internal quotations and citation omitted); *see also Pulsifer v. United States*, 601 U.S. 124, 133 (2024) (courts "review[] text in context"). That is all the Court did here.

In considering statutory context, the Court observed that the PSLRA instructs courts to appoint as lead plaintiff the class member "*most* capable of adequately representing" the putative class. 15 U.S.C. § 78u-4(a)(3)(B)(i) (emphasis added). These are the statute's words, not the Court's policy preference. And they indicate that the standard of proof should therefore aim to ensure that the "most capable" class member becomes lead plaintiff, not just a minimally capable one. *Id.* The genuine and serious doubt standard serves this statutory purpose. By placing a relatively lower burden on competing candidates to rebut the PSLRA's presumption, the genuine and serious doubt standard implicitly requires higher levels of adequacy and typicality from the presumptive lead plaintiff.

The Court also considered how the lead plaintiff selection process was situated within the broader context of private securities litigation, which further supported application of the genuine and serious doubt standard. The Court did this to determine the relative importance of the rights at issue in lead plaintiff selection. ECF No. 142 at 5. Again, that is not the Court substituting its policy judgments for those of Congress. It is the exact type of analysis that the Supreme Court has instructed courts to perform when selecting a standard of proof. *Addington v. Texas*, 441 U.S. 418, 423 (1979).

The Ninth Circuit's decisions in *Cavanaugh* or *Mersho* do not require otherwise. To the contrary, the Court derived the genuine and serious doubt standard *from* those two cases. ECF No. 142 at 4–5 (citing *In re Cavanaugh*, 306 F.3d at 732–33; *In re Mersho*, 6 F.4th at 900–01). Crain Walnut reads those cases differently, suggesting that *Cavanaugh*'s use of the words "genuine and serious doubt" referred narrowly to problems with a plaintiff's choice of counsel. ECF No. 149 at 14. If *Cavanaugh* stood alone, that would be a plausible understanding. *Mersho*, however, illustrates that genuine and serious doubt is not so limited. In *Mersho*, the Ninth Circuit invoked genuine and serious doubt when describing the types of group cohesion problems that would preclude appointment of an investor group as lead plaintiff. 6 F.4th at 901. In doing so, the Ninth Circuit established that genuine and serious doubt refers to more than just choice-of-counsel issues. Rather, the genuine and serious doubt standard applies to a court's analysis of plaintiff inadequacy as a whole no matter what the underlying source of inadequacy may be.

United States District Court
Northern District of California

1    Finally, Crain Walnut claims that the genuine and serious doubt standard "is [] a relative

2    one" in violation of *Cavanaugh*.  306 F.3d at 732 & n.10 (citation omitted).  But applying the

3    standard does not require a court to compare the presumptive lead plaintiff to competing

4    candidates.  Neither did the Court ever compare Crain Walnut's adequacy to Universal's when it

5    found that Universal had rebutted the presumption.  *See generally* ECF No. 142.  To be sure, it is

6    harder for a presumptive lead plaintiff to maintain its position under a genuine and serious doubt

7    standard than under a preponderance of the evidence.  But the genuine and serious doubt standard

8    does not become comparative just because it demands more of the presumptive lead plaintiff (and

9    less of competing candidates).  Whether genuine and serious doubt exists is measured against an

10    objective standard independent of the adequacy of competing candidates.

11    Accordingly, Crain Walnut's arguments regarding the PSLRA's standard of proof for

12    rebuttal are not grounds for reconsideration.

13    **B.    Procedural Objections**

14    Next, Crain Walnut contends that the Court failed to provide the necessary procedural

15    protections before disqualifying it from serving as lead plaintiff.  On this point, Crain Walnut

16    relies on a footnote from *Cavanaugh* instructing district courts to inform the presumptive lead

17    plaintiff of any doubts about the plaintiff's choice of lead counsel before disqualifying the plaintiff

18    from serving based on those doubts.  306 F.3d at 733 n.12.  Since the Court denied Crain Walnut's

19    motion on the basis of several points raised in Universal's second supplemental brief on this

20    matter, which Crain Walnut did not have a chance to reply to, Crain Walnut claims that the Court

21    bypassed this procedural safeguard.

22    At the outset, it is not clear to the Court whether *Cavanaugh*'s footnote 12 applies to the

23    specific situation where a court has concerns about lead *counsel* selection, or if it applies more

24    broadly to lead *plaintiff* selection.  Assuming that the footnote applies in this situation, Crain

25    Walnut has nonetheless waived these procedural protections.  The Ninth Circuit is clear that, in the

26    face of new evidence and arguments submitted on reply, the aggrieved party must act in some

27    way, whether that is to object to the new evidence and arguments or move for leave to file a sur-

28    reply.  *Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1171 (9th Cir. 2018) (citing Civil

L.R. 7-3(d)).  That scenario is equivalent to the one here, where Universal allegedly submitted new evidence and arguments with its final supplemental brief, to which Crain Walnut did not have an automatic right of response.  So, Crain Walnut should have objected to Universal's brief or moved for leave to respond.  Instead, Crain Walnut "did the one thing that a party claiming to be aggrieved by an improper [] submission may not do—[it] did nothing." *Id.* at 1172.  As a result, Crain Walnut has waived any right to respond to Universal's final brief. *Id.* (citing *Getz v. Boeing Co.*, 654 F.3d 852, 868 (9th Cir. 2011)).  This is an independent ground for rejecting Crain Walnut's procedural arguments.

Even if those procedural arguments were not waived, the Court has now given Crain Walnut an opportunity to respond on reconsideration.  While the Court does not find those responses persuasive, *infra* Section III.C, providing that opportunity satisfies any procedural requirement that might exist in these circumstances.  Reconsideration is not warranted on procedural grounds.

### C.    Factual Findings

In concluding that Universal had rebutted the presumption that Crain Walnut was adequate, the Court made several factual findings.  It found that Crain Walnut had skirted its discovery obligations by (a) producing its margin agreement late, (b) making unilateral relevance redactions in a trust document, and (c) testifying, via its 30(b)(6) representative, that it would not obey a court order.  ECF No. 142 at 19–20.  The Court also found that errors in Crain Walnut's submissions indicated a level of inattention and carelessness rendering Crain Walnut inadequate. *Id.* at 16–18.

Crain Walnut contends that several of those factual findings were based on Universal's one-sided recitation of the record to which it had not been able to respond.  On reconsideration, Crain Walnut has provided explanations for much of its discovery conduct.  Having heard Crain Walnut's side of the story, the Court concludes that the "lateness" of Crain Walnut's production of its margin agreement was due to a good faith disagreement about what documents constituted the margin agreement, and Crain Walnut promptly addressed that disagreement. *See* ECF No. 150-2 at 3–4.  Moreover, Crain Walnut's redactions to the trust agreement were not solely relevance

United States District Court
Northern District of California

1    redactions but also based on the right to privacy embodied in the California Constitution. *Id.* at

2    5–6. The Court's instructions on redactions also left open some ambiguities. For these reasons,

3    the Court sets aside the margin agreement and trust agreement issues—they do not contribute to a

4    finding of inadequacy. Still, the issues related to Crain Walnut's testimony that it would not

5    comply with a court order, and those related to Crain Walnut's filing inaccuracies, remain.

### 1.    Testimony Regarding Discovery

7        The Court starts with Crain Walnut's testimony. Testifying as Crain Walnut's 30(b)(6)

8    representative, Charles Crain, Jr. had the following exchange with Universal's counsel:

> Q. Okay. Does [Crain Walnut] have possession, custody or control over your personal financial records?
> A: Could you repeat the question?
> Q. Sure. Does [Crain Walnut] have possession, custody or control over your personal financial records?
> A: No.
> Q. If [Crain Walnut] is required to produce your financial records, your personal ones, will you produce them?
> A: Could you repeat the question?
> Q. If [Crain Walnut] is required to produce your personal financial records, will you produce them?
> A: No

16    ECF No. 139-2 at 168:7–169:4 (objections omitted). As is clear from this exchange, Mr. Crain

17    indicated that he would not comply if Crain Walnut were "required to produce [his] personal

18    financial records." *Id.* From this, the Court found that Crain Walnut had expressed a

19    disqualifying unwillingness to participate in discovery at the expense of Mr. Crain's privacy. ECF

20    No. 142 at 20. While the Court recognized that there may be strong arguments against engaging

21    in discovery of Mr. Crain's personal finances, it was "wholly inappropriate" for Crain Walnut to

22    not obey a court order *if* the Court were to authorize such discovery. *Id.*

23        On reconsideration, Crain Walnut tries to walk back this testimony. First, it points to a

24    bevy of evidentiary objections: vagueness, lack of foundation, incomplete hypothetical, and

25    speculation. ECF No. 149 at 20. The Court overrules those objections—the exchange between

26    Mr. Crain and Universal's counsel was straightforward and clear.

27        Second, Crain Walnut asserts that Mr. Crain interpreted the question differently than the

28    Court did. Crain Walnut makes much of the fact the question at issue used the word "required"

United States District Court
Northern District of California

1    without specific reference to a court order.  That, it says, caused Mr. Crain to believe Universal

2    was asking about whether "he would comply with a demand from Universal's counsel . . . and he

3    answered that he would not produce them because he already produced everything the Court had

4    required" in a prior discovery order.  *Id.* at 21; *see also* ECF No. 150-1 at ¶¶ 4–5 (declaration of

5    Mr. Crain).  The Court does not find this explanation to be plausible.  It makes little sense that,

6    because the question did not specifically reference a "court order," Mr. Crain's thoughts would

7    then turn to an earlier court order.  ECF No. 150-1 at ¶ 5.  The question also does not mention

8    Universal's discovery requests, nor could Universal "require" Crain Walnut to do anything.  Only

9    the Court could "require" Crain Walnut to take certain actions.  After-the-fact statements seeking

10   to mitigate earlier, harmful testimony are also entitled to less weight due to the "widely recognized

11   and unavoidable" biases associated with such statements, notwithstanding that the statements are

12   "offered by persons of character."  *FTC v. Meta Platforms Inc.*, 654 F. Supp. 3d 892, 932 (N.D.

13   Cal. 2023); *see also Odyssey Wireless, Inc. v. Apple Inc.*, No. 15-cv-01735, 2016 WL 4496844, at

14   *6 n. 11 (S.D. Cal. June 30, 2016).

15         Finally, Crain Walnut appears to suggest that the Court should have held an evidentiary

16   hearing on this matter, where Mr. Crain could offer live testimony to explain his deposition

17   testimony.  ECF No. 149 at 20–21.  The Court is aware of no right to an evidentiary hearing under

18   either the PSLRA or case law.

19         In sum, after considering Crain Walnut's arguments to the contrary, the Court still

20   concludes Mr. Crain's testimony reflects an unwillingness to fully participate in discovery that

21   supports a finding of inadequacy.  *See In re Boeing Co. Aircraft Sec. Litig.*, No. 19-cv-2394, 2019

22   WL 6052399, at *7 (N.D. Ill. Nov. 15, 2019).

23                    **2.    Inaccurate Filings**

24         When the Court originally denied Crain Walnut's lead plaintiff motion, the Court found

25   that Crain Walnut had submitted inaccurate filings regarding its ownership structure.  ECF No.

26   142 at 16–18.  When making that finding, the Court acknowledged that the types of inaccuracies

27   "factoring most strongly into the adequacy analysis are those that are directly relevant to the

28   litigation."  *Id.* at 16 (internal quotations and citations omitted).  The Court also noted that Crain

1    Walnut's inaccuracies were not of the kind that substantially affected the merits of the case. *Id.* at

2    17–18.  Nonetheless, the Court concluded that Crain Walnut's inaccuracies supported a finding of

3    inadequacy.  This was due to the fact that those inaccuracies persisted despite Universal

4    specifically calling them out earlier, not because of the substance of those inaccuracies. *Id.* at 17.

5         On reconsideration, Crain Walnut largely reiterates its position that those inaccuracies

6    were inconsequential.  As explained above, the Court already considered the fact that Crain

7    Walnut's inaccuracies did not affect the merits of the case.  Reconsideration is not a vehicle for

8    "asking the Court to rethink what it has already thought," even if a party makes its argument more

9    forcefully and persuasively. *Garcia v. City of Napa*, No. 13-cv-03886, 2014 WL 342085, at *1

10   (N.D. Cal. Jan. 28, 2014).

11        Therefore, the Court does not disturb its conclusion that filing inaccuracies support a

12   finding of inadequacy.

13                    **3.    Cumulative Analysis**

14        That leaves a final issue: do the discovery and inaccuracy issues just discussed satisfy

15   Universal's burden to rebut Crain Walnut's presumption?  Under the genuine and serious doubt

16   standard, the Court's earlier answer of "yes" still holds.  Although the margin agreement and trust

17   agreement issues have fallen away, Mr. Crain's testimony about refusing to comply with court

18   orders still leaves the Court with great doubts.  That testimony is enough on its own to satisfy the

19   genuine and serious doubt standard.  And Crain Walnut's inaccuracies are also enough, even

20   standing alone, to generate significant doubts.  ECF No. 142 at 18.

21        The analysis is slightly different if the Court were to apply a preponderance of the

22   evidence.  In that case, it takes more for discovery issues to be disqualifying—they must be

23   "glaring." *In re Silver Wheaton Corp. Sec. Litig.*, No 2:15-cv-05146, 2017 WL 2039171, at *10

24   (C.D. Cal. May 11, 2017).  Under this standard, it is a closer call whether Mr. Crain's testimony

25   alone is enough to be "glaring," especially since there were no other significant discovery issues.

26   Recall, though, that a preponderance of the evidence does not require absolute certainty, only that

27   the Court believed discovery would more likely than not pose a problem.  Here, Mr. Crain's

28   testimony is so striking that the Court finds it clears the preponderance bar on its own.

Case No.: 5:24-cv-06147-EJD

ORDER DEN. RECONSIDERATION        10

Even if it did not, Mr. Crain's testimony certainly clears the preponderance bar in combination with Crain Walnut's filing inaccuracies. Under a preponderance, those inaccuracies are not an independent ground for a finding of inadequacy. But paired with the discovery issues, those inaccuracies demonstrate inadequacy by a preponderance of the evidence.

For these reasons, the Court **DENIES** reconsideration.

### D.    Purportedly Inconsistent Application of Law

Before concluding, though, the Court briefly addresses Crain Walnut's accusation that the Court applied a "double standard." ECF No. 171 at 14. Crain Walnut faults the Court for allegedly giving "Universal a free pass" from the scrutiny that Crain Walnut faced. That is a blatant distortion of what happened.

The Court applied the same standard to Crain Walnut and Universal at step two of the PSLRA selection process. The Court evaluated whether the two had made out a prima facie case of adequacy by examining their pleadings and declarations without turning to information beyond those documents offered in opposition. *In re Cavanaugh*, 306 F.3d at 730; ECF No. 99 at 4–5; ECF No. 148 at 2–3. Then, at step three, the Court offered competing lead plaintiffs the chance to rebut the step two presumption for both Crain Walnut and Universal. ECF No. 99 at 5–10; ECF No. 142 at 21 (providing time for competing lead plaintiffs to challenge Universal). From there, circumstances diverged. Universal took the chance to challenge Crain Walnut's adequacy, which then required the Court to scrutinize Crain Walnut at step three of the PSLRA's process. *See* ECF Nos. 83, 86, 106, 114, 132. No active lead plaintiff candidate challenged Universal's adequacy, so there was no occasion for the Court to apply step three scrutiny to Universal.

Crain Walnut notes that it had challenged Universal's adequacy in response to Universal's efforts to rebut Crain Walnut's own adequacy. *See* ECF No. 84 at 3–4, 8, 10–11, 15–16; ECF No. 92 at 4–5; ECF No. 111 at 10. But those challenges to Universal's adequacy were not properly before the Court, making it inappropriate for the Court to consider them. Crain Walnut was the presumptive lead plaintiff at that time, not Universal, so the Court "had no cause to pass on [Universal's] adequacy at all." *In re Cavanaugh*, 306 F.3d at 739 n.22. Once Universal became the presumptive lead plaintiff, though, no candidate still eligible for the lead plaintiff position

challenged Universal's adequacy.  *See* ECF No. 146.

Crain Walnut appears to suggest that the Court should have looked back to the arguments Crain Walnut had made earlier and then sua sponte pursued them further.  That would have been deeply improper for several reasons.  First and foremost, a challenge at step three of the PSLRA is "adversarial," not inquisitorial.  *In re Mersho*, 6 F.4th at 899; *In re Cavanaugh*, 306 F.3d at 730. "In our adversarial system of adjudication, [courts] follow the principle of party presentation." *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020).  It is up to the parties to frame and develop the issues.  *Id.*  The Court would be overreaching by inquiring into Universal's adequacy sua sponte based on past arguments that were not properly before the Court and, in any case, were not fully developed.

Relatedly, even if credited, Crain Walnut's arguments against Universal would have at most led to discovery into Universal—they were not sufficient to disqualify Universal without more.  *See* ECF No. 171 at 14–15 (raising questions about standing and structure that would have required discovery).  Obviously, the Court could not and should not issue discovery to Universal. The PSLRA permits lead plaintiff discovery to be conducted only by other plaintiffs.  *Fields v. Biomatrix, Inc.*, 198 F.R.D. 451, 455 (D.N.J. 2000) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iv)).  No plaintiff requested discovery into Universal.

So, while it is true that the Court did not apply step three scrutiny to Universal like it did to Crain Walnut, it was not because the Court applied a double standard or unfairly favored Universal.  Instead, it was because procedurally, Universal properly challenged Crain Walnut's adequacy while nobody properly challenged Universal's.

**IV.    CONCLUSION**

The Court **DENIES** Crain Walnut's motion for reconsideration.

**IT IS SO ORDERED.**

Dated:  August 5, 2025

EDWARD J. DAVILA
United States District Judge