**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| In re:   CRAIN WALNUT SHELLING, LP<br><br>———————————————————<br>—— | No. 25-5435<br><br>D.C. No.<br>5:24-cv-06147-EJD |
| CRAIN WALNUT SHELLING, LP,<br><br>          *Petitioner*.<br><br>   v.<br><br>UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE,<br><br>          *Respondent*.<br><br>SUPER MICRO COMPUTER, INC.; CHARLES LIANG; DAVID WEIGAND; UNIVERSAL-INVESTMENT-GESELLSCHAFT MBH; SURENDRA J. SHAH; THEODORE C. GROSS; THEODORE R. GROSS; VALIKHAN KUNAKBAYEV; ILLINOIS TREASURER; | OPINION |

MISSISSIPPI PUBLIC EMPLOYEES' RETIREMENT SYSTEM; COVEY FINANCIAL, INC.; PEMBROKE CAPITAL LTD. CORP.; SOVEREL, INC.; DAVID BURDETTE; PRITI BHARDWAJ; ERSTE ASSET MANAGEMENT GMBH; CHRISTIAN MAHE DE BERDOUARE; SUPER MICRO INVESTOR GROUP; JOSEPH AVERZA; Doctor MITHILESH K. JHA; NORFOLK COUNTY RETIREMENT SYSTEM,

*Real Parties in Interest*.

Petition for a Writ of Mandamus

Argued and Submitted February 12, 2026
San Francisco, California

Filed May 7, 2026

Before: N. Randy Smith, Jacqueline H. Nguyen, and
Gabriel P. Sanchez, Circuit Judges.

Opinion by Judge N.R. Smith

# SUMMARY[*]

## Securities Class Action / Mandamus

The panel denied a petition for a writ of mandamus to vacate the district court's orders declining to appoint Crain Walnut Shelling, LP, as lead plaintiff in a securities fraud class action under the Private Securities Litigation Reform Act ("PSLRA").

Applying the *Bauman* test for deciding whether to grant mandamus relief, the panel held that the district court did not commit clear error, and the other *Bauman* factors did not demonstrate that mandamus was appropriate.

The PSLRA established a sequential process for appointing the lead plaintiff in a securities class action. First, the district court identifies the movant with the largest financial interest. Provided that movant makes a prima facie showing of adequacy and typicality, the court names them the presumptive lead plaintiff. The process then becomes adversarial. Competing movants may rebut the presumption of adequacy and typicality upon proof that the presumptively most adequate plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render that plaintiff incapable of adequately representing the class. If the presumption is not rebutted, then the presumptively most adequate plaintiff must be appointed lead plaintiff.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the standard of proof for rebutting the presumption of adequacy under the PSLRA is preponderance of the evidence. The district court first applied an incorrect "genuine and serious doubt" standard, but in denying reconsideration it reasoned alternatively that Crain Walnut's presumption of adequacy had been rebutted even under the correct presumption of the evidence standard. In its reconsideration order, the district court held that the competing plaintiff had rebutted Crain Walnut's presumption of adequacy based on two categories of evidence:  (1) filing  inaccuracies;  and  (2) problematic testimony from Crain Walnut. The panel held that district court's determination that Crain Walnut's adequacy had been sufficiently rebutted based on the preponderance of the evidence did not amount to clear error because it did not leave the panel with a definite and firm conviction that a mistake had been committed.

The panel concluded that even if several of the remaining *Bauman* factors favored Crain Walnut, the absence of clear error struck a mortal blow against its petition for a writ of mandamus.

## COUNSEL

David J. Zimmer (argued), Zimmer Citron & Clarke LLP, Cambridge, Massachusetts; Lucas E. Gilmore and Reed R. Kathrein, Hagens Berman Sobol Shapiro LLP, Berkeley, California; Steve Berman, Hagens Berman Sobol Shapiro LLP, Seattle, Washington; Brian J. Schall and Andrew J. Brown, The Schall Law Firm, Los Angeles, California; for Petitioner.

John Rizio-Hamilton (argued), Avi Josefson, Scott R. Foglietta, Preethi Krishnamurthy, and Gerald H. Silk, Bernstein Litowitz Berger & Grossmann LLP, New York, New York; Jonathan D. Uslaner, Bernstein Litowitz Berger & Grossmann LLP, Los Angeles, California; Boris Feldman, Carl P. Hudson, Elena Hadjimichael, and Doru Gavril, Freshfields US LLP, Redwood City, California; Joshua P. Davis, Berger Montague PC, San Francisco, California; Charles H. Linehan, Glancy Prongay Wolke & Rotter LLP, Los Angeles, California; Adam M. Apton, Levi & Korsinsky LLP, San Francisco, California; Robert J. Gralewski Jr., Kirby McInerney LLP, San Diego, California; Daniel L. Berger and Caitlin Moyna, Grant & Eisenhofer PA, New York, New York; Mary E. Graham, Grant & Eisenhofer PA, San Francisco, California; Lesley E. Weaver and Adam C. McCall, Bleichmar Fonti & Auld LLP, Oakland, California; David R. Kaplan, Saxena White PA, Solana Beach, California; Jennifer Pafiti, Pomerantz LLP, Los Angeles, California; Eric J. Belfi and Francis P. McConville, Labaton Keller Sucharow LLP, New York, New York; Alex J. Tramontano, Wolf Haldenstein Adler Freeman & Herz LLP, San Diego, California; for Real Parties in Interest.

## OPINION

N.R. SMITH, Senior Circuit Judge:

Crain Walnut Shelling, LP ("Crain Walnut") petitions for a writ of mandamus to vacate the district court orders, declining to appoint Crain Walnut as lead plaintiff in an underlying securities fraud class action under the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4. We deny the petition because the district court did not commit clear error and because the other *Bauman* factors do not demonstrate that mandamus is appropriate.

That said, we write to clarify an issue often confronted by district courts: what is the standard of proof for rebutting the presumption of adequacy and typicality afforded to a presumptive lead plaintiff under the PSLRA? The PSLRA established a sequential process for appointing the lead plaintiff in a securities class action. First, the district court identifies the movant with the largest financial interest (i.e., the "loss leader"), and provided that movant makes a prima facie showing of adequacy and typicality, the court names them the presumptive lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); Fed. R. Civ. P. 23. The process then becomes adversarial. Competing movants may rebut the presumption of adequacy and typicality "upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff . . . will not fairly and adequately protect the interests of the class; or . . . is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* § 78u-4(a)(3)(B)(iii)(II). If the presumption is not rebutted, the presumptively most adequate plaintiff must be appointed lead plaintiff. *Id.* § 78u-4(a)(3)(B)(i). The standard of proof

for rebutting the presumption of adequacy under the PSLRA is preponderance of the evidence.

The district court mistakenly applied a lowered "genuine and serious doubt" standard to rebut the presumption of the lead plaintiff's adequacy in this case. However, in the alternative, it also applied the correct standard and determined that the evidence put forth by the opposing party demonstrated by a preponderance of evidence that the presumptive lead plaintiff was inadequate.

### Factual and Procedural Background

On August 30, 2024, Joseph Averza filed the first claim in a putative class action alleging federal securities claims against Super Micro and its executives. Members of the putative class filed ten separate motions for appointment as lead plaintiff, including both Crain Walnut and Universal. Over time, each member withdrew its petition or filed statements of non-opposition except for Crain Walnut and Universal.

On December 12, 2024, the district court entered an order that evaluated Crain Walnut's lead plaintiff motion and Universal's opposition to that motion under the PSLRA's framework. The district court found that Crain Walnut's "$49 million in losses from its investment in Super Micro securities . . . dwarfs Universal's calculated loss of approximately $12 million, as well as every other lead plaintiff movant's calculated loss." The district court then held that Crain Walnut had made a prima facie showing of adequacy and typicality under Rule 23(a) of the Federal Rules of Civil Procedure and was thus "presumptively the most adequate plaintiff."

Universal challenged Crain Walnut's adequacy, specifically questioning the statements (in a sworn declaration) of Charles Crain Jr. ("Mr. Crain"), the CEO of Crain Walnut, that he was the "sole" owner of Crain Walnut, despite public records indicating that Crain Walnut had a General Partner and may be part of a network of interrelated entities. The district court concluded that Universal had not sufficiently rebutted the presumption of Crain Walnut's adequacy, but that "it ha[d] demonstrated a reasonable basis" for questioning it. Accordingly, the district court determined that "discovery [was] necessary before the Court [could] make a final decision."[1]

Discovery proved problematic for Crain Walnut. During Mr. Crain's deposition as Crain Walnut's Rule 30(b)(6) representative, Mr. Crain had the following exchange with Universal's counsel:

> Q: Okay. Does [Crain Walnut] have possession, custody or control
>
> over your personal financial records?
>
> A: Could you repeat the question?
>
> Q: Sure. Does [Crain Walnut] have possession, custody or control
>
> over your personal financial records?
>
> A: No.

---

[1] The PSLRA permits discovery into the presumptive lead plaintiff's adequacy if the movant can "demonstrate[] a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iv).

Q: If [Crain Walnut] is required to produce your financial records,

your personal ones, will you produce them?

A: Could you repeat the question?

*Q: If [Crain Walnut] is required to produce your personal financial*

*records, will you produce them?*

*A: No*

Mr. Crain's deposition also revealed inconsistencies with Crain Walnut's supposed organizational structure.   In an attachment to Crain Walnut's opening statement, Mr. Crain certified that he was the "sole owner" and "Chief Executive Officer" of Crain Walnut.   After Universal pointed out inconsistencies with the purported organizational structure, Mr. Crain clarified in a declaration that the General Partner of Crain Walnut is "Nuez Progesivo, Inc., an entity which is 100% owned by Grupo Progresivo, Inc., which is an entity that is 100% owned by me, Charles Crain, Jr."  However, Mr. Crain later testified to a different ownership structure regarding Grupo Progresivo, Inc. and Crain Walnut.   This newly discovered structure was inconsistent with Crain Walnut's prior certifications and the district court's Civil Local Rule 3-15 submission.     Civil L.R. 3-15(b)(2). [2] Further, Mr. Crain had failed to disclose the existence of Nuez Progresivo, Inc., Grupo Progresivo, Inc., Crain Walnut

---

[2] N.D. Cal. Civil Local Rule 3-15(b)(2) requires disclosure of "any persons, associations of persons, firms, partnerships, corporations (including, but not limited to, parent corporations), or any other entities . . . known by the party to have . . . a financial interest of any kind in [the action] or in a party to the proceeding."

Shelling, Inc., or his revocable trust through the Rule 3-15 submission, despite his deposition testimony that these entities had a financial interest in the litigation.   Crain Walnut never corrected the errors in its Rule 3-15 submission.

On June 26, 2025, the district court entered another order analyzing Crain Walnut's lead plaintiff motion.  The order followed the PLSRA's sequential process, and the court once again determined that Crain Walnut was the presumptive lead plaintiff.   The district court then adopted a lowered "genuine and serious doubt" standard for rebutting a presumption of adequacy under the PSLRA, citing a lack of controlling precedent.   *Averza v. Super Micro Computer, Inc.*, 788 F. Supp. 3d 1060, 1072–74 (N.D. Cal. 2025) (citing *In re Cavanaugh*, 306 F.3d 726, 732–33 (9th Cir. 2002); *In re Mersho*, 6 F.4th 891, 900–01 (9th Cir. 2021)).  The district court reasoned that such a standard "is consistent with the principles governing choice of a standard of proof" and Ninth Circuit precedent.  *Id.* at 1073.  Using this lowered standard of proof, the district court determined that Universal had rebutted the presumption of Crain Walnut's adequacy and denied its lead plaintiff motion.  *Id.* at 1084. The district court explained that "concerns about Crain Walnut's lack of care and unwillingness to participate in discovery [left] the Court with *genuine and serious doubts* that Crain Walnut [would] adequately meet all the obligations that come with representing the putative class as lead plaintiff."  *Id.* (emphasis added).

On July 10, 2025, the district court entered an order that appointed Universal as the lead plaintiff, finding that Universal's "pleadings and declarations" were "sufficient to establish" a prima facie showing of adequacy and typicality. No party ever attempted to rebut Universal's adequacy, and

the court undertook no further analysis.  In the same order, the district court granted a motion filed by Crain Walnut for leave to file a motion for reconsideration of the denial of its lead plaintiff motion.

On August 5, 2025, the district court denied the motion for reconsideration.  While the district court maintained that the "genuine and serious doubt" standard was properly applied in accordance with our precedent, it also alternatively determined that Mr. Crain's deposition testimony and the filing inaccuracies cumulatively demonstrated that Crain Walnut was inadequate to be lead plaintiff even under a preponderance of the evidence standard.

## Discussion

### I.  Writ of Mandamus

We have authority to issue a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651.  "A writ is an extraordinary remedy and Petitioners bear the burden of showing that their right to it is 'clear and indisputable.'"  *Mersho*, 6 F.4th at 897 (quoting *In re Boon Glob. Ltd.*, 923 F.3d 643, 649 (9th Cir. 2019)).  To determine whether mandamus is appropriate, we consider the five *Bauman* factors:

> (1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires. (2) The petitioner will be damaged or prejudiced in a way not correctable on appeal. (This guideline is closely related to the first.) (3) The district court's order is clearly erroneous as a matter of law. (4) The district court's order is an oft-repeated error, or

> manifests a persistent disregard of the federal rules. (5) The district court's order raises new and important problems, or issues of law of first impression.

*Bauman v. U.S. Dist. Ct.*, 557 F.2d 650, 654–55 (9th Cir. 1977) (simplified).

### i.   *Bauman*'s Third Factor: Clear Error

We begin our analysis of whether to grant the writ with *Bauman*'s third factor, clear error, because such analysis may be dispositive.  *Boon*, 923 F.3d at 649.  "The clear error standard is significantly deferential and is not met unless the reviewing court is left with a 'definite and firm conviction that a mistake has been committed.'"  *Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.*, 586 F.3d 703, 708 (9th Cir. 2009) (quoting *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 623 (1993)).

Crain Walnut argues the district court clearly erred on three occasions: (1) when it applied a sub-preponderance standard of review in denying Crain Walnut's lead plaintiff motion; (2) when it determined that the available evidence, even under a preponderance of the evidence standard, showed Crain Walnut's inadequacy; and (3) when it applied an unfair "double standard" to Universal's lead plaintiff motion.[3]  We will address the arguments in turn.

---

[3] Crain Walnut argues that it was subjected to a "double standard" based on the district court's failure to engage in a more fulsome analysis of Universal's adequacy.  Crain Walnut was not subjected to a double standard.  As the district court determined, no lead plaintiff candidate challenged Universal's adequacy.  The district court had no basis to apply further scrutiny to Universal.

### 1. Standard of Proof: Preponderance of the Evidence

To determine whether the district court committed a clear error in applying the "genuine and serious doubt" standard, it is necessary to first establish what is the controlling standard of proof for rebutting the presumption of a loss leader's adequacy and typicality under the PSLRA. Here, the district court erred by deviating from the "default standard of proof in American civil litigation," preponderance of the evidence, which was established by the Supreme Court nearly a century ago. *E.M.D. Sales, Inc. v. Carrera*, 604 U.S. 45, 50 (2025). Similarly, our precedent holds that this standard generally applies in civil litigation. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (en banc).

The PSLRA states that a "presumption [of adequacy under § 78u-4] may be rebutted *only upon proof* by a member of the purported class that the presumptively most adequate plaintiff (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses."   15 U.S.C.  § 78u-4(a)(3)(B)(iii)(II) (emphasis added).  The term "only upon proof" does not prescribe a specific evidentiary standard, and "[i]n the absence of direction from Congress or the Constitution, it is up to the court to prescribe the burden of proof." *Olean*, 31 F.4th at 664 (citing *Herman & MacLean v. Huddleston*, 459 U.S. 375, 389–90 (1983)).  We have not expressly specified the governing standard of proof for adequacy determination under the PSLRA, nor have the parties identified other circuit law settling the issue.  However, neither Supreme Court precedent, our precedent, nor a balancing of the interests give us reason to deviate from the "default" burden of proof in civil litigation—preponderance of the evidence—

for rebutting the loss leader's presumption of adequacy and typicality under the PSLRA.  *See E.M.D. Sales, Inc.*, 604 U.S. at 50.[4]

### a.  Supreme Court Precedent

It is well established that we apply preponderance of the evidence as the default standard of proof in civil litigation. *See Herman*, 459 U.S. at 387 ("In a typical civil suit for money damages, plaintiffs must prove their case by a preponderance of the evidence."); *see also E.M.D. Sales, Inc.*, 604 U.S. at 49–50 (citing sources from as early as 1867 recognizing this standard).  In *E.M.D. Sales*, the Supreme Court reaffirmed this principle and held that we apply preponderance of the evidence in civil cases unless we have indications that another standard should apply.  *E.M.D. Sales, Inc.*, 604 U.S. at 50–51.  Specifically, the Supreme Court has delineated the "three main circumstances" where courts have deviated from the "default" preponderance of the evidence standard: (1) when the operative statute has established a heightened standard proof; (2) when the Constitution has required a heightened standard of proof; and (3) the "uncommon case" where "the government seeks to take unusual coercive action—action more dramatic than entering an award of money damages or other conventional relief—against an individual."  *Id.*  Neither the PSLRA nor the Constitution demand a heightened standard of proof in naming a lead plaintiff, and no coercive government action occurred in the instant case.  Under the Supreme Court's

---

[4] Upon reconsideration, the district court engaged in statutory analysis of the PSLRA to support the establishment of the lowered standard.  While the term "only upon proof" in the PSLRA may be ambiguous, the plain meaning of the text does not indicate that Congress intended to deviate from the default preponderance of the evidence standard.

precedent, preponderance of the evidence is therefore the correct standard of proof for civil actions of this kind.

### b.  Ninth Circuit Precedent: *Cavanaugh* and *Mersho*

In its declaration of the "genuine and serious doubt" standard, the district court relied on a misreading of *Cavanaugh*, 306 F.3d 726, and *Mersho*, 6 F.4th 891. Contrary to the district court's reading, neither case gives any indication that a standard of proof lower than preponderance should apply.

In *Cavanaugh*, the district court determined that a plaintiff's presumption of adequacy had been rebutted based on evidence that the loss leader's fee arrangement was less favorable than other moving plaintiffs.  306 F.3d at 732–33. We held that the district court "went off the statutory track . . . by failing to give effect to the presumption" because the evidence relied upon by the district court relating to the loss leader's choice of counsel "is relevant only to determine whether the presumptive lead plaintiff's choice of counsel *is so irrational, or so tainted by self-dealing or conflict of interest*, as to cast *genuine and serious doubt* on that plaintiff's willingness or ability to perform the functions of lead plaintiff."  *Id.* at 731, 733 (emphasis added).  Holding that the fee arrangement did not raise such doubts, we granted mandamus and ordered the district court to "proceed based on the presumption that the [loss leader] is the most adequate."  *Id.* at 739.

Two decades later, we again addressed the PSLRA's lead plaintiff appointment process in *Mersho*, 6 F.4th at 898–900. In *Mersho*, we considered whether the district court had properly rebutted the loss leader's presumption of adequacy under the PSLRA.  *Id.* at 900–01.  The district court "based its decision on 'misgivings' about a lack of cohesion or

control over counsel" with the presumptive lead plaintiff.  *Id.* at 901.  We held that "[m]isgivings are not evidence that cast 'genuine and serious doubt on [the] plaintiff's willingness or ability to perform the functions of lead plaintiff.'"  *Id.* (quoting *Cavanaugh*, 306 F.3d at 733).   Accordingly, "competing movants must point to evidence of inadequacy," and "[b]ecause the district court here based its decision only on speculation . . . it was clear error to find that the presumption had been rebutted."  *Id.* at 901–902.

The district court here relied on *Cavanaugh* as the foundation for a "genuine and serious doubt" standard and on *Mersho* in its adoption of that language.  *See Averza*, 788 F. Supp. 3d at 1073.   In doing so, the district court improperly lifted "genuine and serious doubt" out of its context in those cases.   Neither *Cavanaugh* nor *Mersho* indicated that a lowered standard of proof should apply, nor did they establish "genuine and serious doubt" as the guiding standard of proof in lead-plaintiff cases.  In *Cavanaugh,* we conditioned that a finding of "genuine and serious doubt" of the plaintiff's adequacy must be based on conduct "so irrational, or so tainted by self-dealing or conflict of interest" to overcome the presumption.  306 F.3d at 733.  Similarly, in *Mersho*, we did not suggest that a lower standard of proof applies when we held that a district court had improperly rebutted the loss leader's presumption of adequacy by "bas[ing] its decision only on speculation."  6 F.4th at 902.

In fact, *Cavanaugh* makes clear that the PSLRA adopted Rule 23's standard for adequacy determinations:

> Nothing in our pre-Reform Act caselaw even remotely suggests that a district court may find a plaintiff to be inadequate to serve as class representative under Rule 23(a) because

> the district court believes he should have
> hired a different lawyer or the same lawyer
> for less. The Reform Act did not change this
> standard; rather, it adopted the typicality and
> adequacy requirements of Rule 23 in haec
> verba. We conclude, therefore, that *the
> Reform Act did not change the standard for
> adequacy, and that the adequacy inquiry
> remains the same* in determining the lead
> plaintiff in securities cases as in determining
> the class representative in other cases brought
> under Rule 23.

306 F.3d at 736 (emphasis added).  We have established that
Rule 23 adequacy determinations are governed by a
preponderance of the evidence.  *See Olean*, 31 F.4th at 665.
In *Olean*, we noted that "the application of Rule 23 to certify
a class" does not give rise to a "heightened standard of proof
beyond the traditional preponderance standard."  *Id.*  We
reach a similar conclusion in the context of the lead-plaintiff
determination here.

### c.   Balancing of the Interests

In prescribing the burden of proof, "we must consider
both the allocation of 'the risk of error between the litigants'
and 'the relative importance attached to the ultimate
decision.'"  *Olean*, 31 F.4th at 664 (quoting *Herman*, 459
U.S. at 389).   The Supreme Court has maintained
preponderance of the evidence as the "default" standard of
proof in civil litigation for nearly a century because it
"allows both parties in the mine-run civil case to 'share the
risk of error in roughly equal fashion.'"  *E.M.D. Sales, Inc.*,
604 U.S. at 50 (quoting *Herman*, 459 U.S. at 390).
Comparatively, "[a]ny other standard expresses a preference

for one side's interests." *Herman*, 459 U.S. at 390.  For these reasons, we have held that "the preponderance of the evidence standard is 'generally applicable in civil actions.'" *Olean*, 31 F.4th at 664 (quoting *Addington v. Texas*, 441 U.S. 418, 423 (1979)).

Applying the balancing test to the PSLRA framework, the interests favor the preponderance of the evidence standard.   The  class  certification  context  provides instruction.  Like the PSLRA's requirement that a loss leader be appointed unless an opposing movant demonstrates their inadequacy  or  that  their  claims  are  atypical,  Rule  23(a) requires that a proposed class representative meet a standard of adequacy and typicality.  Fed. R. Civ. P. 23(a).  In *Olean*, we determined that plaintiffs "must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence." 31 F.4th at 665.  We reasoned that the balance of interests favored preponderance of the evidence because "Rule 23 does not 'change plaintiffs' separate entitlements to relief nor abridge defendants' rights' and, instead, alters 'only how the claims are processed.'"  *Id.* at 664–65 (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010)).  The PSLRA operates in the same way. The determination  as  to  a  presumptive  lead  plaintiff's adequacy or typicality under the PSLRA does not change the plaintiff's separate entitlements in a securities class action (the plaintiffs can still vindicate their rights in a separate action) or abridge the defendant's rights in any manner.[5]

---

[5] Universal argues that the district court correctly determined that Crain Walnut has a comparatively narrow interest in its "ability to control the putative class action," when measured against the substantive interests of the putative class because "any settlement or judgment that the lead plaintiff secures is all they will receive."  *Averza*, 788 F. Supp. 3d at

Like a class representative being chosen in the Rule 23 context, the appointment of a lead plaintiff only impacts "how the claims are processed." *Id.* at 665. We hold that the preponderance of the evidence standard applies to a rebuttal of the presumption of adequacy under the PSLRA.

***

Given our longstanding rule that we apply a preponderance of the evidence standard of proof in civil litigation, the application of the "genuine and serious doubt" standard would have amounted to a clear error had the district court simply made its ruling based on that standard. However, in its denial of reconsideration, the district court did not constrain itself solely to the "genuine and serious doubt" standard, reasoning alternatively that Crain Walnut's presumption of adequacy had been rebutted even under the correct preponderance of the evidence standard. To determine whether there was clear error, we now undertake a "significantly deferential" review of the district court's determination that Universal sufficiently rebutted Crain Walnut's adequacy by a preponderance of the evidence. *Cohen*, 586 F.3d at 708.

---

1073. Again, a comparison to the class certification context is helpful. A presumptive lead plaintiff under the PSLRA has a greater interest in being named the lead plaintiff than any plaintiff in a putative class action has in being named the class representative because the lead plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). That is a stronger interest than that of a class representative, who works alongside class counsel but does not select class counsel. *See* Fed. R. Civ. P. Rule 23(g).

### 2. Application of the Preponderance Standard

In its reconsideration order, the district court held that Universal had rebutted Crain Walnut's presumption of adequacy based on two categories of evidence: (1) filing inaccuracies; and (2) problematic testimony from Crain Walnut. We hold that the district court's determination that Crain Walnut's adequacy had been sufficiently rebutted does not amount to a clear error.

First, Crain Walnut compromised its credibility by filing inaccurate documents and by later failing to correct its inaccuracies. In a supporting declaration to Crain Walnut's opening statement, Mr. Crain claimed to be the sole owner of Crain Walnut. After Universal pointed out inconsistencies in that statement, Crain Walnut attempted to clarify its ownership structure, yet still failed to get it right. Mr. Crain submitted a second declaration that identified each of the corporate entities in its ownership structure—Nuez Progresivo, Inc.; Grupo Progresivo, Inc.; and Crain Walnut Shelling, Inc.—and represented that he owned 100% of Crain Walnut. But it was later revealed in Crain Walnut's 30(b)(6) deposition that Mr. Crain had incorrectly informed the district court that he was the 100% owner of Grupo Progresivo. In actuality, his trust had the ownership rights. The district court found that Crain Walnut failed to present its correct ownership structure to the district court even after "Universal made its doubts about Crain Walnut's ownership structure a centerpiece of its opposition to Crain Walnut's motion." Crain Walnut also failed to report its correct ownership structure in its Civil Local Rule 3-15 certification, which requires parties to report any "ownership of a legal or equitable interest, however small." 28 U.S.C. § 455(d)(4) (incorporated into the Civil Local Rules by reference); Civil

L.R. 3-15(b)(2).  Crain Walnut never corrected its Rule 3-15 submission.   While such misrepresentations may be immaterial to the underlying claims of securities fraud, the representations nonetheless constitute evidence of inadequacy because they demonstrate a lack of credibility and ability to work with the court.

Second, Crain Walnut's 30(b)(6) deposition correctly raised an issue in the eyes of the district court. During the deposition, Mr. Crain was asked "if [Crain Walnut] is required to produce your personal financial records, will you produce them?"  Mr. Crain responded clearly, "no."  That answer amounts to testimony that Crain Walnut would refuse to comply with a court order compelling discovery.  Crain Walnut now argues that Mr. Crain was confused by the question because it did not directly reference a court order, and that the speculative nature of the question lowers its evidentiary value.  However, as the district court found, the question was clear, and his response was unequivocal.

Crain Walnut argues that the facts of this case are on par with those we deemed insufficient to rebut the loss leader's presumption of adequacy in both *Cavanaugh* and *Mersho*. However, the district court relied upon two discrete areas of evidence that call into question the adequacy of Crain Walnut and that push the facts of this case well beyond the perceived inadequacies noted in either of those cases.  In *Cavanaugh*, the only evidence relied upon by the district court in rebutting the loss leader's presumption was that the presumptive lead plaintiff had entered into a comparatively less advantageous fee arrangement than other plaintiffs, which we deemed an improper "freewheeling comparison" of the lead plaintiff applicants.  306 F.3d at 732.  And in *Mersho*, we held that a district court improperly rebutted a lead plaintiff's presumption of adequacy based on

speculative "misgivings" about the presumptive lead plaintiff's "ability to control the litigation without undue influence from counsel." 6 F.4th at 897 (quoting *Borteanu v. Nikola Corp.*, 507 F. Supp. 3d 1128, 1137–38 (D. Ariz. 2020)).

Here, the district court was not engaging in a "freewheeling comparison" between the movants, nor did it simply rely on "misgivings" because, unlike *Cavanaugh* and *Mersho*, the district court in this case relied on two discrete areas of evidence that directly implicated Crain Walnut's adequacy. Crain Walnut's arguments effectively amount to a disagreement with the district court's factual conclusions, which falls short of establishing that the district court made the "clear error" required for a writ of mandamus to be granted. *See Cordoza v. Pac. States Steel Corp.*, 320 F.3d 989, 1001 (9th Cir. 2003) ("This attack at best raises a factual dispute, not the prospect that the district court made a clear error requiring a writ of mandamus.").

The district court's determination that Crain Walnut's adequacy had been sufficiently rebutted based on the preponderance of the evidence does not leave us with a "definite and firm conviction that a mistake has been committed." *Cohen*, 586 F.3d at 708 (simplified). We therefore find that the district court did not clearly err.

Based on the foregoing, we deny Crain Walnut's petition for a writ of mandamus because the absence of *Bauman*'s third factor is dispositive. *See Boon*, 923 F.3d at 649; *see also In re Van Dusen*, 654 F.3d 838, 841 (9th Cir. 2011) (explaining that "clear error as a matter of law[] is a necessary condition for granting a writ of mandamus"). Because *Bauman* counsels that we address all its factors, we proceed to do so.

### ii.  Remaining *Bauman* Factors

The first and second *Bauman* factors favor a grant of mandamus.  "The first *Bauman* factor highlights the need for mandamus to be used only when no other realistic alternative is (or was) available to a petitioner."  *Cole v. U.S. Dist. Ct. For Dist. of Idaho*, 366 F.3d 813, 817 (9th Cir. 2004).  The second *Bauman* factor is similar but focuses on whether the harm to petitioners cannot be corrected on a direct appeal.  *See San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1099 (9th Cir. 1999).  These factors are considered together.  *Id.*  As we previously determined in *Mersho*, Crain Walnut has "no realistic alternative to challenge the district court's decision absent mandamus relief."  6 F.4th at 902.  Interlocutory appeals are "unavailable for an order designating lead plaintiff."  *Id.* (citing *Z-Seven Fund, Inc. v. Motorcar Parts & Accessories*, 231 F.3d 1215, 1218–19 (9th Cir. 2000)).  Thus, "it is fair to conclude that the plaintiffs do not have an adequate remedy, other than mandamus, from the district court's order," *Cavanaugh*, 306 F.3d at 740 (Wallace, J., concurring), and that these factors weigh in Crain Walnut's favor.

"[T]he fourth and fifth *Bauman* factors are often mutually exclusive."  *San Jose Mercury News, Inc.*, 187 F.3d at 1103.  "The fourth factor looks to whether the case involves an 'oft-repeated error,' while the fifth factor considers whether the petition raises new and important problems or issues of first impression."  *Mersho*, 6 F.4th at 903 (quoting *Bauman*, 557 F.2d at 655).  Here, the fourth factor is not met because Crain Walnut has not pointed to any case law showing that courts have "oft-repeated" the error of applying a "genuine and serious doubt" standard to the rebuttal of a lead-plaintiff presumption.  However, we do face an important issue of first impression in considering this

petition, because no circuit court has definitively established the standard of proof required to rebut the PSLRA's presumption in favor of the loss leader.  Therefore, the fifth factor weighs in favor of granting Crain Walnut's petition.

Even if several of the remaining *Bauman* factors favor Crain Walnut, the absence of clear error strikes a mortal blow against its petition for mandamus.  *See In re U.S.*, 791 F.3d 945, 955 (9th Cir. 2015) (explaining that "the absence of factor three—clear error as a matter of law—will always defeat a petition for mandamus . . . .") (quoting *DeGeorge v. U.S. Dist. Ct.*, 219 F.3d 930, 934 (9th Cir. 2000)).

### Conclusion

Preponderance of the evidence is the correct standard for rebutting the presumption of adequacy afforded to a presumptive lead plaintiff under the PSLRA.  The district court applied that standard in its reconsideration order and did not clearly err in determining that Crain Walnut's presumption of adequacy had been rebutted based on the available evidence.  We therefore deny the petition for writ of mandamus.  Parties are to bear their own costs.

**WRIT DENIED.**