United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE SUPER MICRO COMPUTER, INC., SECURITIES LITIGATION | Case No. 5:24-cv-06147-EJD<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 183 |

Lead Plaintiff Universal-Investment-Gesellschaft mbH ("Plaintiff") brings this securities fraud action under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") on behalf of itself and others who purchased or otherwise acquired the securities of Defendant Super Micro Computer, Inc. ("SMCI") between November 3, 2020, and October 30, 2024 (the "Class Period"). First Am. Compl. ("FAC"), ECF No. 176. Before the Court is a motion to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by SMCI and Individual Defendants Charles Liang ("Liang") and David Weigand ("Weigand") (collectively, "Defendants"). Mot., ECF No. 183; Opp'n, ECF No. 186; Reply, ECF No. 188.

The Court held a hearing on March 12, 2026, and heard oral arguments from all parties. ECF No. 190. For the reasons explained below, the Court **GRANTS** Defendants' motion to dismiss with leave to amend.

## I. BACKGROUND

In March 2007, SMCI became a public company listed on the Nasdaq. FAC ¶ 21. As a public company, SMCI is required by securities laws and regulations to maintain effective "internal controls" to ensure that information about the company's business operations and

United States District Court
Northern District of California

financial results in public filings is complete and accurate. *Id.* ¶ 22. Internal controls over financial reporting are intended to be designed by or under the supervision of a company's CEO and CFO to provide reasonable assurances before a company's financial statements are published to investors. *Id.*

Prior to the Class Period, beginning in 2017, SMCI's Audit Committee found its internal controls suffered certain deficiencies, also referred to as "weaknesses." *Id.* ¶ 28. The company's Form 10-K revealed issues including: "a culture of aggressively focusing on quarterly revenue without sufficient focus on compliance"; an "inappropriate tone at the top" that was "inconsistent with a commitment to integrity and ethical values"; that "[s]enior management did not establish and promote a control environment with an appropriate tone of compliance" but rather actively "condoned" accounting violations; and "recogniz[ing] revenue from . . . sales transactions in the incorrect period" by "shipping products before manufacturing was completed," and "deficiencies related to segregation of duties," including "management overriding internal controls." *Id.* ¶¶ 24, 25, 43. Due to these weaknesses, SMCI failed to file required SEC reports for over 1.5 years, and Nasdaq subsequently suspended trading and delisted the company from August 2018 to January 2020. *Id.* ¶¶ 1, 3, 23, 26. During that time, in August 2020, the SEC also began investigating SMCI and the company's former CFO, Howard Hideshima, for improper internal accounting practices. Mot., Ex. 22, ECF No. 183-23.[1] Mr. Hideshima paid disgorgement to resolve the matter, and Defendant Liang agreed to reimburse SMCI for $2.1 million in stock compensation. *Id.*

Plaintiff alleges that in November 2020, the start of the Class Period, SMCI began reassuring investors that SMCI's internal controls were fully remediated. FAC ¶ 4. During an earnings call on November 3, 2020, Defendant Liang assured investors that SMCI's internal control problems were "resolved a few months ago" and that "the big challenges in the past three

---

[1] The Court grants Defendants' unopposed request to take judicial notice of this document. Req. for J. Notice, ECF No. 184; *see* Opp'n to Req. for J. Notice, ECF No. 187 (not objecting to Ex. 22).

years that badly hurt Supermicro are totally behind us now." *Id.* ¶ 4. In SEC filings, SMCI similarly stated that its problems were a thing of "the past" and had been "remediated." *Id.*

Yet, according to Plaintiff, those representations were false. *Id.* ¶ 5. SMCI allegedly had not remediated its internal control weaknesses and continued to engage in the same improper accounting practices. *Id.* Specifically, Plaintiff alleges the following control issues persisted, among others:

- Inappropriate tone at the top: Defendants Liang and Weigand allegedly created a culture at SMCI that prioritized company profits over regulatory compliance, encouraged employees to engage in improper accounting practices, and threatened employees who refused to comply. *Id.* ¶¶ 42–55.
- Failure to segregate duties: Defendant Liang allegedly required employees to obtain his approval on every business and accounting decision, allowing him to alter revenue numbers. *Id.* ¶¶ 56–61.
- Recognizing revenue in the incorrect period: SMCI allegedly recognized revenue for certain contracts before fulfilling those contracts. *Id.* ¶¶ 62–97.
- Improper inventory accounting: SMCI allegedly overstated its assets and understated expenses to artificially increase the company's financial performance. *Id.* ¶¶ 98–121.

The alleged falsity of Defendants' statements was discovered in August 2024, when investment research firm Hindenburg issued an investigative report raising concerns about SMCI's deficient internal controls. *Id.* ¶ 7. The Hindenburg report stated that former SMCI employees revealed SMCI's internal control problems had persisted despite the company being delisted by Nasdaq and investigated by the SEC. *Id.* SMCI publicly denied the report's allegations, but the company's stock price still dropped 2.64% on August 27, 2024. *Id.* ¶ 127. The next day, SMCI announced that it would not timely file its Form 10-K because it needed additional time to assess the effectiveness of its internal controls. *Id.* ¶¶ 128–29. SMCI's stock price subsequently dropped another 19%. *Id.* ¶ 129. In September 2024, *The Wall Street Journal* reported that the DOJ had initiated an accounting-related investigation into SMCI. *Id.* ¶¶ 134–35. SMCI's stock price fell

United States District Court
Northern District of California

another 12% in response to this news. *Id.* ¶ 135.

One month later, in October 2024, SMCI announced in its Form 8-K that Ernst & Young ("EY"), SMCI's auditor, had resigned over concerns about the company's internal controls over financial reporting. *Id.* ¶¶ 136–39, 144. SMCI also revealed that EY had first raised concerns to SMCI's Audit Committee in July 2024 and that SMCI established a Special Committee of SMCI's board of directors to investigate. *Id.* ¶¶ 133, 137. SMCI's stock price dropped 33% in response to the news of EY's departure. *Id.* ¶ 12.

In February 2025, SMCI filed a delayed 2024 Form 10-K. *Id.* ¶ 153. Its next auditor, BDO, stated that SMCI had not maintained effective internal controls "as of" June 2024, including a failure to segregate duties and maintain "controls over the completeness and accuracy of information" in financial statements. *Id.* ¶ 153. Defendants likewise admitted in their filing that SMCI "did not maintain . . . effective internal control over financial reporting." *Id.* ¶ 154.

Plaintiff filed this lawsuit on August 30, 2024, days after the Hindenburg report was published. The Court appointed Lead Plaintiff on July 10, 2025, ECF No. 148, and Plaintiff filed the operative FAC on September 22, 2025.

## II. LEGAL STANDARD

A complaint typically survives a Rule 12(b)(6) motion to dismiss if it alleges enough facts that, accepted as true, state a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But securities fraud claims under Sections 10(b) and 20(a) of the Exchange Act must meet the heightened pleading requirements of Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 604 (9th Cir. 2014). To comply with Rule 9(b), a plaintiff must plead the "who, what, when, where, and how" of the alleged fraud. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (quoting *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)). The PSLRA separately requires a plaintiff to plead falsity with particularity and to plead particularized facts giving rise to a strong inference of scienter. *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 876–77 (9th Cir. 2012). Namely, the plaintiff must establish a strong inference of scienter.

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 766 (9th Cir. 2023) (quoting 15 U.S.C. § 78u-4(b)(2)(A)).

If the court concludes that a Rule 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

## III. DISCUSSION

To state a claim under Section 10(b) and Rule 10b-5, a plaintiff must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1140 (9th Cir. 2017) (quoting *Halliburton Co. v. Erica P. John Fund*, Inc., 573 U.S. 258, 267 (2014)).

Among other elements,[2] Defendants argue Plaintiff failed to plead falsity. Statements are false or misleading if they "directly contradict what the defendant knew at that time," *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018), or "create an impression of a state of affairs that differs in a material way from the one that actually exists," *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).

In the FAC, Plaintiff alleges two categories of statements are false or misleading. The first category consists of statements concerning the effectiveness of SMCI's internal controls:

- On November 3, 2020, during SMCI's first earnings call following the SEC order, Liang stated that SMCI had ***"resolved"*** the weaknesses ***"a few months ago,"*** and "the big challenges in the past three years that badly hurt Supermicro are ***totally behind us now***." FAC ¶¶ 35, 188.

---

[2] Defendants also argue Plaintiff failed to adequately plead scienter and loss causation. However, given the Court's finding that Plaintiff failed to plead falsity, the Court need not reach the remaining elements at this time.

United States District Court
Northern District of California

- Defendants repeated this message in SMCI's Class Period Form 10-Ks filed on August 27, 2021, August 29, 2022, and August 28, 2023, asserting: "***In the past,*** we have had one or more material weaknesses, ***which we have remediated.***" *Id.* ¶¶ 36, 191.
- Each Form 10-K also included a "risk warning" that SMCI ***might*** not "maintain" effective controls. *Id.* ¶¶194–96. But at that time, Plaintiff alleges Defendants knew they were not in fact maintaining effective controls.
- In Sarbanes-Oxley Act ("SOX") certifications and SMCI's 2023 "Sustainability Report," Defendants asserted that they designed and maintained adequate internal and disclosure controls. *Id.* ¶¶ 198, 205, 209, 211–12, 220.

The second category consists of statements denying the Hindenburg report findings:

- Defendants falsely dismissed as "rumors and speculation" the Hindenburg report in emails to media outlets in August 2024, which described how SMCI had not "changed from its checkered past regarding its revenue recognition and accounting practices." *Id.* ¶¶ 7, 123–26, 131, 227, 236.
- SMCI publicly filed with the SEC a letter on September 3, 2024, that Liang signed claiming that the Hindenburg report "contain[ed] false or inaccurate statements" and "misleading presentations of information." *Id.* ¶¶ 131, 230.

To support its allegations that these statements are false and misleading, Plaintiff offers accounts of several former employees ("FEs") who state that Defendants continued perpetuating the same control weaknesses throughout the Class Period, as well as EY's resignation and post-Class Period admissions that the company's material weaknesses persisted. Among other arguments,[3] Defendants contend that these allegations fail to identify the "reasons why the

[3] Defendants also argue that the challenged statements are "inactionable opinions" or expressions of "corporate optimism" that are "too general to give rise to any particular impression." *Dolly v. GitLab Inc.*, No. 24-CV-06244-EKL, 2025 WL 2372965, at *6, 9 (N.D. Cal. Aug. 14, 2025). However, given the Court's finding that Plaintiff failed to plead particularized facts to contradict the challenged statements, the Court need not reach these additional arguments at this time.

statement[s] [are] misleading, and . . . state with particularity all facts on which that belief is formed." *In re Rigel Pharmaceuticals, Inc. Securities Litigation*, 697 F.3d at 877.

The Court will address in turn whether (1) the FE allegations, (2) EY's departure, and (3) non-Class Period events are sufficient to meet the Exchange Act's heightened requirement to plead falsity with particularity.

**A. Former Employee (FE) Allegations**

First, Defendants argue that the FE allegations—regarding SMCI maintaining an inappropriate tone at the top, failing to segregate duties, recognizing revenue in the incorrect period, and improperly accounting for inventory—lack the specificity required to show the challenged statements were false at the time they were made.

For example, the FEs recount various internal control issues within SMCI that occurred during their employment, but Defendants contend their allegations reference vague periods of time disconnected from the specific dates of the challenged statements. FEs like senior executive Bob Luong ("Luong"),[4] FE 3, and FE 7 allege that misconduct occurred "many times" or "throughout" their tenures without identifying any specific times these events occurred. *See, e.g.,* FAC ¶¶ 58, 77, 81, 84. Defendants argue such "generalized reports . . . at certain points in time are insufficient" to plead falsity. *Scandlon v. Blue Coat Sys., Inc.*, No. C 11-4293 RS, 2013 WL 5313168, at *3 n.3 (N.D. Cal. Sept. 23, 2013); *see also Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 619 (9th Cir. 2022) (plaintiffs must plead the "who, what, when, where, and how" of alleged fraud); *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 806 (N.D. Cal. 2019) (dismissing where plaintiffs "fail[ed] to allege . . . when" the underlying problems occurred). This ambiguity is compounded, according to Defendants, by the fact that seven of the eight FEs were not employed for the entire Class Period. Luong left SMCI on October 14, 2022, and was thus absent when most of the challenged statements were made. *Id.* ¶¶ 191, 194, 205, 219–21, 227, 230. FE 2 was not at SMCI between September 2021 and January 2023 and was thus absent when

[4] Luong is the only FE identified by name; all other FEs made their allegations anonymously.

challenged statements were made during that time. *Id.* ¶¶ 50 n.37, 191, 194, 197–99, 219–21. FE 3 left in November 2021 and was not employed at SMCI during the time when the majority of the challenged statements were made. *Id.* ¶¶ 50, 191, 194, 197–99, 205, 219–21, 227, 230. FE 5 left in February 2022 and missed everything from Q3 2022 onward. *Id.* ¶¶ 54, 191, 194, 197–99, 205, 219–21, 227, 230. And FE 6 left in August 2023 and missed everything thereafter. *Id.* ¶¶ 59, 205, 219–21, 227, 230. As for FE accounts regarding events occurring before or after the Class Period, Defendants argue such allegations are insufficient to show the statements made during the Class Period were false. Similarly, Defendants argue vague references to "reports" and "monthly and quarterly" events do not meet the requirement to "cite to . . . specific report[s]" and "dates or contents" of those meetings, reports, and interactions. *In re Silicon Storage Tech., Inc., Sec. Litig.*, No. C-05-0295PJH, 2007 WL 760535, at *7 (N.D. Cal. Mar. 9, 2007).

In response, Plaintiff contends that the FE allegations show a longstanding *pattern* of deficient internal controls and therefore do not require the specificity demanded in the case law Defendants cite. Plaintiff also highlights several specific dates identified in Mr. Luong's allegations—that he reviewed a Quarterly Revenue Recognition Report in December 2020 that improperly accounted for revenue by 3.5%, observed practices that overvalued inventory from February 2021 until October 2022, and received an email showing Defendants prematurely recognized revenue for hardware before installation on February 18, 2022. Opp'n 10 (citing FAC ¶¶ 72, 89–93, 114, 163).

The Court agrees with Defendants that the FE allegations do not satisfy the PSLRA's particularity requirement. The FE allegations are impermissibly vague as to *when* the alleged control issues occurred—substituting specific dates for describing events that took place "at times," "many times," or "from time to time"—as well as *what* conduct contradicted SMCI's challenged statements—vaguely describing reports and meetings without describing in sufficient detail the conduct or statements made therein. Even the allegations identifying particular dates do not adequately connect those events to the falsity of any particular challenged statement. The Court also agrees that, to the extent FEs discuss facts occurring before or after the Class Period,

those allegations, without particularized facts connecting them to the challenged statements, are insufficient to establish that the statements were false when made. *In re Eventbrite, Inc. Sec. Litig.*, No. 5:18-CV-02019-EJD, 2020 WL 2042078, at *9 (N.D. Cal. Apr. 28, 2020). The pre-Class Period events, standing alone, do not establish that the challenged statements were false when made. Plaintiff must plead particularized facts connecting those earlier deficiencies to the condition of SMCI's internal controls at the time of each challenged statement. *See Das v. Unity Software Inc.*, No. 5:22-CV-03962-EJD, 2024 WL 1141733, at *9 (N.D. Cal. Mar. 15, 2024) ("[P]re-Class Period allegations . . . do not establish the falsity of the statements made during the Class Period.").[5] The Court also finds Plaintiff's argument that specific dates and descriptions are not required under its theory that SMCI engaged in a longstanding *pattern* of deficient controls is unsupported by any case law.[6] A theory based on a longstanding pattern does not relieve Plaintiff of the obligation to plead particularized facts showing that the relevant deficiency existed when each challenged statement was made. And while Plaintiff characterizes Defendants' case law as "inapposite," it makes no attempt to explain how. Opp'n 11 ("Defendants' cases are inapplicable.") (citing *Scandlon*, 2013 WL 5313168, at *3, and *Weston Family Partnership LLLP*, 29 F.4th at 622). Accordingly, the Court finds the FE allegations do not satisfy the PSLRA's particularity requirement for falsity.

### B. EY's Resignation

Next, Defendants argue that EY's resignation does not invalidate the challenged statements concerning internal controls.

EY's resignation letter provided:

> [W]e are resigning due to information that has recently come to our

---

[5] Plaintiff's citation to *In re Toyota Motor Corp. Sec. Litig.*, No. CV 10-922 DSF AJWX, 2012 WL 3791716, at *4 (C.D. Cal. Mar. 12, 2012), for its finding that "facts predating the class period are relevant to establish that statements made during the class period were materially false" is unpersuasive. The court there resolved a dispute regarding the scope of discovery and found facts predating and postdating the class period could be relevant to knowledge of falsity for purposes of scienter.

[6] In any event, the FEs' periods of employment make it difficult to infer that SMCI had a *consistent* pattern of poor internal control throughout the Class Period.

> attention which has led us to no longer be able to rely on management's and the Audit Committee's representations and to be unwilling to be associated with the financial statements prepared by management, and after concluding we can no longer provide the Audit Services in accordance with applicable law or professional obligations.

FAC ¶ 138. Defendants claim that EY's resignation letter suggests only disagreement with SMCI's management and did not specifically identify any internal control problems. To the extent EY's letter could be interpreted to express concern about SMCI's internal controls, SMCI argues that its Special Committee found that these concerns were not supported after the committee's investigation.[7] SMCI also highlights that EY's resignation did not trigger a restatement of SMCI's financial disclosures.

Plaintiff contends that Defendants mischaracterize EY's resignation. Plaintiff cites to the Form 8-K filing representing that EY also communicated "concerns about several matters relating to governance, transparency and completeness of communications to EY, and other matters pertaining to the Company's internal control over financial reporting." FAC ¶ 136. Plaintiff also asserts that the lack of a restatement is not dispositive because Defendants Liang and Weigand have final say as to whether to issue a restatement, and the two defendants themselves are the ones allegedly perpetuating internal control problems at SMCI. Likewise, Plaintiff contends the results of the Special Committee investigation do not exonerate SMCI, because the committee consisted of one board member who could have been biased.

Again, the Court finds Defendants' position more persuasive. EY's resignation letter reflects disagreements with management; it does not identify any specific internal control deficiency or explain how any such deficiency affected SMCI's financial reporting. And while the absence of a restatement does not by itself establish the truth of SMCI's prior disclosures, it further underscores the absence of particularized allegations tying EY's resignation to a specific accounting or internal control deficiency that existed when the challenged statements were made.

[7] The Court need not rely on the Special Committee's alleged findings in this Order and therefore declines to rule on Defendants' request for judicial notice of Ex. 20, and Plaintiff's objections thereto, at this time.

*See In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1255 (S.D. Cal. 2010) (finding "no evidence to connect Ernst & Young's resignation" to "corporate misconduct" where company "did not issue a restatement"); *Rok v. Identiv, Inc.*, No. 15-CV-5775-CRB, 2017 WL 35496, at *10 (N.D. Cal. Jan. 4, 2017), *aff'd sub nom. Cunningham v. Identiv, Inc.*, 716 F. App'x 663 (9th Cir. 2018) (finding no falsity, as no "Restatement due to" misconduct was issued). Although the Form 8-K states that EY had communicated "concerns about several matters relating to governance, transparency and completeness of communications to EY, and other matters pertaining to the Company's internal control over financial reporting," Plaintiff does not identify which particular deficiencies EY had identified, when EY identified them, or how those deficiencies corresponded to the deficiencies allegedly concealed by the challenged statements. The Court therefore finds EY's resignation also does not provide the particularized facts needed to contradict the challenged statements and prove their falsity.

**C. Non-Class Period Allegations**

Finally, SMCI argues that Plaintiff's other allegations regarding events outside of the Class Period cannot show that the challenged statements were false when they were made.

In addition to the FE accounts concerning conduct that occurred outside the 2020–2024 Class Period, Plaintiff also cites SEC orders from August 2020 punishing SMCI for internal control failures between 2014 and 2017, as well as the 2025 admission made after the Class Period closed. FAC ¶¶ 28, 145–57. Defendants argue these events cannot show falsity for the same reasons mentioned above—falsity must be shown at the time the statements were made. *Eventbrite,* 2020 WL 2042078, at *9; *Das,* 2024 WL 1141733, at *9 ("[P]re-Class Period allegations . . . do not establish the falsity of the statements made during the Class Period."). Plaintiff responds by arguing, again, that allegations of non-Class Period events are appropriate to show that statements made during the Class Period were false because Plaintiff alleges that SMCI had a *recurring* issue with internal controls before, during, and after the Class Period.

The Court similarly finds the non-Class Period allegations insufficient to establish falsity. While internal control issues that occurred prior to the Class Period are relevant to Plaintiff's

United States District Court
Northern District of California

theory that the same issues persisted, they are insufficient to show the statements made during the Class Period were false. And Plaintiff failed to allege particularized facts connecting the 2025 admission to the specific challenged statements made during the Class Period. The Form 10-K upon which Plaintiff relies, filed on February 25, 2025, vaguely states that SMCI "did not maintain, in all material respects, effective internal control over financial reporting *as of* June 30, 2024." FAC ¶ 153. This may be relevant to the state of SMCI's internal controls as of June 30, 2024, but Plaintiff must identify how the specific deficiencies identified as of that date contradict each challenged statement and allege facts showing that those deficiencies existed when the challenged statements were made. Without connecting the alleged internal control issues reported in 2025 to the timing of the challenged statements, such admissions after the Class Period do not adequately establish falsity under the PSLRA. *See, e.g., Lamontagne v. Tesla, Inc.*, No. 23-CV-00869-AMO, 2024 WL 4353010, at *12 (N.D. Cal. Sept. 30, 2024), *aff'd sub nom. Oakland Cnty. Voluntary Employees' Beneficiary Ass'n v. Tesla Inc.*, No. 25-55, 2025 WL 3459471 (9th Cir. Dec. 2, 2025) (dismissing complaint for lack of "contemporaneous reports or data showing that the statement was false or misleading when made"); *accord In re Vantive Corp. Sec. Litig.*, 110 F. Supp. 2d 1209, 1217 n.14 (N.D. Cal. 2000), *aff'd*, 283 F.3d 1079 (9th Cir. 2002) (holding that "events occurring after the alleged class period do not show that the representations made during the class period were false when made" absent "particular contemporaneous facts that establish . . . falsity"); *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1404 (9th Cir. 1996) (measuring falsity against the state of affairs when a statement is made, not the one nine months prior); *In re Eventbrite*, 2020 WL 2042078, at *9 ("A plaintiff may rely on contemporaneous statements or conditions to demonstrate why statements were false when made, but such circumstantial evidence must be plead with particularity."). The Court therefore finds that these allegations concerning events outside the Class Period also fail to provide sufficiently particularized facts contradicting the challenged statements.

Accordingly, the Court finds Plaintiff failed to plead with particularity facts sufficient under the PSLRA to show that SMCI's statements regarding remediation of prior internal control

deficiencies were false or misleading. The Court therefore **GRANTS** Defendants' motion to dismiss on this ground. The Court finds the pleadings could possibly be cured by the allegations of additional facts and accordingly grants leave to amend. *Lopez*, 203 F.3d at 1127.

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' motion to dismiss with leave to amend. Should Plaintiff wish to file an amended complaint, it must do so by October 21, 2026.

**IT IS SO ORDERED.**

Dated: September 30, 2026

EDWARD J. DAVILA
United States District Judge